**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **RESTRICTED SPENDING SOLUTIONS, LLC,**<br><br>　　　　　**Plaintiff,**<br><br>　**v.**<br><br>**ALLOW CARD OF AMERICA, INC.; PALM DESERT INVESTMENTS; WACHOVIA CORP.; PNC FINANCIAL SERVICES GROUP, INC.; PAYJR, INC., CARDLAB, INC.; THE BANCORP INC.; DISCOVER FINANCIAL SERVICES; DISCOVER BANK; BANK OF AMERICA CORP.; COMMERCE BANCSHARES, INC.; UMB FINANCIAL CORP.; FIFTH THIRD BANCORP; MASTERCARD INTERNATIONAL, INC.; VISA U.S.A. INC.; U.S. BANCORP,**<br><br>　　　　**Defendants.** | **Case No. 1:09-cv-03785-RRP-NRN**<br><br>**Judge Rebecca R. Pallmeyer** |

**DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT OF
INVALIDITY OF PLAINTIFFS' U.S. PATENT NO. 6,044,360
IN VIEW OF VISA'S U.S. PATENT NO. 5,500,513**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................... 1

II.   UNDISPUTED MATERIAL FACTS ........................................................................... 2

    A.    Visa' '513 Prior Art Patent:  Automated Purchasing Control System Using Credit Cards .......................................................................................................... 2

    B.    The '360 Patent:  Picciallo's First Disclosure, And His Ensuing 1997 Patent Application For A Third Party Credit Card. ................................................ 3

    C.    The '360 Prosecution:  Express Reliance On Use Of Existing Credit Card Infrastructure But Failure To Cite The Visa '513 Patent ...................................... 4

III.  ARGUMENT ................................................................................................................. 6

    A.    Legal Standard .................................................................................................... 6

    B.    Only One Claim Term—"Funds"—Requires Construction .................................. 8

    C.    No Genuine Dispute Exists That Visa's '513 Patent Clearly And Convincingly Discloses Every Element Of The Asserted Claims Of The Patent-In-Suit ................................................................................................... 10

        1.    Visa's '513 Patent Clearly And Convincingly Discloses The Same Ability to Impose "Transaction Limits For Particular Classes of Good and Services" Claimed in the '360 Patent ....................................... 10

        2.    Whatever The "Accumulation" Actually Claimed by the '360 Patent Covers, It Is Fully Disclosed By The '513 Patent ........................ 12

IV.   CONCLUSION ............................................................................................................ 15

## TABLE OF AUTHORITIES

## FEDERAL CASES

*02 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
   521 F.3d 1351 (Fed. Cir. 2008)...................................................................8

*In re Bilski*,
   545 F.3d 943 (Fed. Cir. 2008), *cert. granted,* 129 S.Ct. 2735 (June 1, 2009) (No.
   08-964)............................................................................................................2

*Black & Decker Inc. v. Robert Bosch Tool Corp.*,
   476 F. Supp. 2d 887 (N.D. Ill. 2007) ...........................................................8

*Centricut, LLC v. Esab Group, Inc.*,
   390 F.3d 1361 (Fed. Cir.2004)......................................................................8

*Helifix Ltd. v. Blok-Lok, Ltd.*,
   208 F.3d 1339 (Fed. Cir. 2000).....................................................................7

*Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*,
   493 F.3d 1358 (Fed. Cir.2007)......................................................................9

*Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC*,
   381 F.3d 1142 (Fed. Cir. 2004).....................................................................8

*Leggett & Platt, Inc. v. VUTEk, Inc.*,
   537 F.3d 1349 (Fed. Cir. 2008).....................................................................7

*Martek Biosciences Corp. v. Nutrinova, Inc.*,
   579 F.3d 1363 (Fed. Cir. 2009).....................................................................9

*Perfect Web Technologies Inc. v. InfoUSA, Inc.*,
   587 F.3d 1324 (Fed. Cir. 2009)..................................................................7, 8

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005).....................................................................4

*CCS Fitness, Inc. v. Brunswick Corp.*,
   288 F.3d 1359 (Fed. Cir. 2002).....................................................................8

*SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*,
   511 F.3d 1186 (Fed. Cir. 2008).....................................................................6

*Schering Corp. v. Geneva Pharm.*,
   339 F.3d 1373 (Fed. Cir. 2003).....................................................................6

*Scripps Clinic & Research Foundation v. Genentech, Inc.*,
    927 F.2d 1565 (Fed. Cir. 1991)..............................................................................7

*Seachange Int'l, Inc. v. C-COR, Inc.*,
    413 F.3d 1361 (Fed. Cir. 2005)............................................................................5

*Sulzer Textil A.G. v. Picanol N.V.*,
    358 F.3d 1356 (Fed. Cir. 2004)............................................................................8

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
    247 F.3d 1316 (Fed. Cir. 2001)............................................................................7

*Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*,
    375 F.3d 1341 (Fed. Cir. 2004)............................................................................8

## FEDERAL STATUTES

35 U.S.C. § 102(b) ..............................................................................................6

35 U.S.C. § 102(e) ..............................................................................................6

35 U.S.C. § 112 ..................................................................................................4

Fed. R. Civ. P. 56(b) .........................................................................................15

Fed. R. Civ. P. 56(c) ...........................................................................................7

## I.   __INTRODUCTION__

Defendant Visa U.S.A. Inc. ("Visa") has led innovation in credit card technology since it introduced the first general purpose credit card in 1958.  In 1994, Visa, applying its extensive experience in the field, applied through several of its inventor-employees for a patent on an automated purchasing control system.  The invention allowed the fund depositor – for example, a company – to automatically and periodically fund and track the purchasing accounts of employees.  Visa's application broadly disclosed how the company could impose on its cardholder employees various periodic transaction limits on purchases of classes of goods and services, enabling the company to limit or prohibit use of specific accounts to make specific transactions (such as cash withdrawals).  In March of 1996, Visa's application issued as U.S. Patent No. 5,500,513 ("the '513 Patent"), containing eleven figures and a twenty-column specification.  Declaration of Roderick M. Thompson In Support Of Defendants' Motion for Summary Judgment Of Invalidity ("Thompson Decl."), Ex. A.

In June of 1997 – more than a year after the '513 patent issued – Michael J. Picciallo applied for a patent that eventually issued as U.S. Patent No. 6,044,360 ("the '360 Patent"), entitled "Third Party Credit Card."  Thompson Decl., Ex. B.  Picciallo claimed an invention of parental funding of credit cards for their teenage children while controlling their purchasing.  He told the U.S. Patent and Trademark Office (the "PTO") that "two concepts" were novel:  the child's card was (1) "automatically and periodically funded," and (2) subject to "periodic transaction limits for particular classes of goods and services."  Thompson Decl., Ex. C (RSS000156-158).  He did not, however, disclose to the PTO the '513 Patent, which contained both of these concepts and much more.  Picciallo's assignee, plaintiff Restricted Spending Solutions, LLC ("RSS"), now asserts the '360 Patent against Visa and the other Defendants.

If any patentable invention exists in the '360 Patent, Visa invented it – not Mr. Picciallo.[1]

Accordingly, this Court should find the '360 Patent invalid as "anticipated" by Visa's '513

Patent and grant Defendants' motion for summary judgment of invalidity.

## II.   UNDISPUTED MATERIAL FACTS

In accordance with Local Rule 56.1, Defendants have served and filed herewith a

statement of material facts as to which there is no genuine issue and that entitle Defendants to a

judgment as a matter of law.  This statement includes an element-by-element mapping of where

each of the 20 claims being asserted by Plaintiff RSS is disclosed in the '513 Patent.  This

memorandum provides an overview of those undisputed material facts, including a description of

the inventions disclosed in the two patents, the claims asserted by Plaintiff, and what we believe

will be the only two issues that can even colorably be disputed by RSS.  (To the extent Plaintiff's

opposition attempts to raise other factual issues, they will be addressed in Reply).

### A.   Visa' '513 Prior Art Patent:  Automated Purchasing Control System Using Credit Cards.

Credit cards have evolved significantly since 1958 when Visa's predecessor promulgated

the first "general purpose" credit card accepted by a cross-section of merchants.  Declaration of

Laurence M. Goodman In Support Of Defendants' Motion For Summary Judgment Of Invalidity

("Goodman Decl.") ¶ 8.  Since then, Visa has implemented, among other improvements, the first

debit card (1975), the first global ATM network (1983), and the first neural network for fraud

---

[1]  There is great deal of other prior art that would also invalidate the simple allowance card concepts claimed in Picciallo's alleged invention.  Visa has disclosed to Plaintiff over fifty prior art references.  For the reasons explained below, Defendants believe that the '513 patent is the strongest single reference and therefore bring this narrow motion without waiving the right to assert other prior art when and if necessary.  In addition, the '360 Patent claims no patentable subject matter under the Federal Circuit's decision in *In re Bilski,* 545 F.3d 943 (Fed. Cir. 2008), *cert. granted,* 129 S.Ct. 2735 (June 1, 2009) (No. 08-964).  Defendants believe that it is most efficient to await the U.S. Supreme Court decision before litigating the application of *Bilski* to the '360 Patent, and similarly reserve that issue.

protection (1993).  *Id.* at ¶ 8.  By the early 1990s, credit card technology had matured

considerably.  *Id.* at ¶ 8.  For example, Defendants to date have located (and disclosed) some

fifty prior art  publications that discuss the specific topics of cards that (1) imposed periodic

spending limits on particular classes of goods and services (such as tobacco and alcohol), and/or

(2) involved maintenance of spending allowances for minors or company employees through the

automatic and periodic funding of accounts.

In May 1994, Visa inventors Messrs. Langhans, Goodman, and Shapiro, filed an

application for a patent that disclosed these two features in the context of a method for

"automated purchasing control . . . using credit cards."   Thompson Decl., Ex. A ('513 Patent).

The '513 Patent issued on March 19, 1996.  *Id.*  Visa's '513 patent is generally directed to Visa's

corporate card program, consisting of corporate travel and entertainment (or "T&E") cards as

well as corporate purchasing programs.  *Id.* at 6:10-8:30.  It discloses the operation of these

programs in detail (11 figures and 20 columns of text), including related processing, billing and

reporting systems and methods that allow an employer to create sub-accounts for employees.  *Id.*

at Fig. 2, 3:54-65 and Fig. 5, 4:23-34 .  The '513 patent describes how the employer may limit

the amounts that each individual card user can spend periodically and for specific classes of

goods and services.  *Id.* at 14:54-59, 13:49-57.  The disclosure covers both prior art (*Id.* at 1:8-

58) and some improvements invented by Visa as of May 1994.  *Id.* at 3:49-17:10.

**B.      The '360 Patent:  Picciallo's First Disclosure, And His Ensuing 1997 Patent
          Application For A Third Party Credit Card.**

On April 16, 1996, Picciallo, then the general manager of the "Wheels In Motion" Roller

Skating Rink, filed a three-page handwritten disclosure with the PTO.  Thompson Decl., Ex. D

(RSS001483-1490).[2]  Entitled "The Allowance Card," the disclosure described the "very simple"

idea of a parent obtaining a credit card for a child:

> A major credit card company [such as] Visa, Master Card,
> Discovery [sic], Amex will be the support.  Say John Doe has a
> card such as those stated above.  He has a son and daughter in high
> school and wants to give them a monthly allowance but is afraid of
> just handing out money and where they are spending it.  He has the
> card company issue two allowance cards under his main account.
> He tells the card company to take $80.00 a month, charge it to his
> account, and put $40.00 to each of children's allowance cards.

*Id.*  The PTO rejected the application as lacking any claims and suggested that Picciallo retain

counsel if he wished to pursue a patent.  *Id.*, Ex. D at 2 (RSS001507-1510).

After hiring counsel, Picciallo filed an application with claims on June 16, 1997.  *Id.*, Ex.

C (RSS000029-62).  Picciallo later disclaimed reliance on the 1996 disclosure for the purposes

of supporting his 1997 application that issued as the '360 Patent.  *Id.*, Ex. C (RSS000180-187)

("Applicant does not wish to rely on the first [1996] application at this time . . . . and, for now,

applicant will rely upon the June 16, 1997 filing date of the present application . . .").

### C.    The '360 Prosecution:  Express Reliance On Use Of Existing Credit Card Infrastructure But Failure To Cite The Visa '513 Patent

The PTO's initial office action rejected all claims in the application for lack of

enablement under 35 U.S.C. § 112, ¶ 1 (requiring description of the invention "to enable any

person skilled in the art" to "make and use the same").  Thompson Decl., Ex. C (RSS000076-77)

("No enabling disclosure is provided in any meaningful sense").  Picciallo responded by

amending his claims several times and eventually submitting a declaration of two computer

programmers, who opined "that a programmer of ordinary skill can implement the invention"

based solely on the disclosure in the patent application.  *Id.*, Ex. C at ¶¶ 2-3 (RSS000174-77).

---

[2] Mr. Picciallo originally filed an application on January 4, 1996, but because the document
lacked any claims, the PTO did not grant the applicant a filing date until he submitted claim
language on April 16, 1996.  *See id.*, Ex. D (RSS001495-97).

They explained that Picciallo's invention required use of existing credit cards and authorization networks.

These programmers concluded that the invention "contemplate[d] the issuing of a credit card" and use of the "existing infrastructure" to authorize the transaction from the merchant's POS (Point of Sale) device via the credit card company's network.  *Id.* at ¶¶ 4-5.  The existing system also listed the account number associated with the card presented, for example, specifically identifying Visa credit and debit cards.  *Id.* ¶ 7 ("Visa is '4313' [and] Visa Debit Cards are '4828'").   The declarants concluded that because credit card companies already track spending "based on the merchant identification numbers transmitted by POS terminals," to implement the '360 Patent, "a subroutine" could easily check that "the merchant identification number was among the numbers approved for the account."  *Id.* ¶ 8 The depositor (or employer) would "select approved classifications, and with each approval, a group of merchant identification numbers would be entered in the database program as being approved for that account."  *Id.* ¶ 9 (This idea of grouping Merchant Classification Codes is disclosed and discussed in detail in the '513 Patent (*see infra* at 10-12)).

At the Examiner's suggestion, Picciallo also provided his own declaration to explain his "understanding of the state of the prior art to the best of my knowledge as of the June 16, 1997 filing date of the present application."  Thompson Decl., Ex. C at ¶ 1 (RSS000156-158).  In distinguishing a college campus purchasing card, Mr. Picciallo claimed patent coverage for "two concepts":  "The first is an allowance account that is automatically and periodically funded (see claims 78-96).  The other is an allowance account having periodic transaction limits for particular classes of goods and services (see claims 97-115)."[3]  *Id.* at ¶ 3 (RSS000157).  The

---

[3] Upon issuance of the patent, claims 78-96 were renumbered as claims 1-19 and claims 97-115 were renumbered as claims 20-38.

declaration did not mention the '513 Patent, which issued more than one year before Picciallo's 1997 application.  Thompson Decl., Ex. A.  Nor is the '513 Patent listed any where else in the '360 prosecution, including in any of the several Information Disclosure Statements submitted by Picciallo's lawyer.  The PTO issued the '360 Patent on March 28, 2000.  *Id.*, Ex. B.

## III.   ARGUMENT

### A.   Legal Standard

A patent claim is invalid as "anticipated" where a single prior art reference clearly and convincingly discloses every limitation of the claimed invention.  *SRI Int'l, Inc.  v. Internet Sec. Sys., Inc.*, 511 F.3d 1186, 1192 (Fed. Cir. 2008); *see* 35 U.S.C. § 102(b) (prohibiting the patenting of an invention where "the invention was [already] patented . . . more than one year prior to the date of the application for patent in the United States"); 35 U.S.C. § 102(e) (prohibiting the patenting of an invention where "the invention was described in . . . a patent granted on an application for patent by another filed in the United States before the invention by the applicant for the patent.").[4]  "A prior art reference may anticipate without disclosing a feature of the claimed invention if that missing characteristic is necessarily present, or inherent, in the single anticipating reference."  *Schering Corp. v. Geneva Pharm.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003) (holding that patent-in-suit was inherently anticipated by patent for underlying antihistamine).  "Under the principles of inherency, if the prior art necessarily functions in

---

[4] Here, RSS cannot credibly dispute that Visa's '513 Patent predates the patent-in-suit within the meaning of both § 102(b) and § 102(e) of the Patent Act.  Visa's '513 Patent issued on March 19, 1996 – more than one year before the June 16, 1997 application date of the patent-in-suit – thereby qualifying the '513 Patent as prior art under § 102(b).  Alternatively, Visa's application for the '513 Patent, filed on May 11, 1994 demonstrates that Visa applied for its patent months (if not years) before Mr. Picciallo claims to have conceived of his alleged invention.  Therefore, the '513 Patent also qualifies as prior art to the patent-in-suit under § 102(e).  Because RSS cannot credibly dispute the '513 Patent's priority to the patent-in-suit, the remainder of this brief focuses on the disclosure in the '513 Patent of every asserted claim element of the patent-in-suit.

24688\2154983.1

accordance with, or includes, the claimed limitations, it anticipates." *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1327 (Fed. Cir. 2001) (upholding summary judgment that patent-in-suit was inherently anticipated by prior art patent).   "Recourse to extrinsic evidence is proper to determine whether a feature, while not explicitly discussed, is necessarily present in a reference."  *Id.* at 1328.

Determining whether a reference anticipates a patent requires two steps:  (1) construing any disputed claim terms of the patent-in-suit; and (2) resolving whether the reference discloses the same elements as the asserted claims.  *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000); *Scripps Clinic & Research Foundation v. Genentech, Inc.*, 927 F.2d 1565, 1576 (Fed. Cir. 1991).[5]  "While anticipation is a question of fact, it may be decided on summary judgment if the record reveals no genuine dispute of material fact."  *Leggett & Platt, Inc. v. VUTEk, Inc.*, 537 F.3d 1349, 1352 (Fed. Cir. 2008); *see* Fed. R. Civ. P. 56(c).

Where, as here, the technology is relatively simple and the level of skill in the art requires only a high school education and limited computing experience, no expert testimony is required to inform the Court's invalidity analysis.  *Perfect Web Technologies Inc. v. InfoUSA, Inc.* 587 F.3d 1324, 1330 (Fed. Cir. 2009) ("[T]he parties agreed that ordinary skill in the relevant art required only a high school education and limited marketing and computer experience.  No expert opinion is required to appreciate the potential value to persons of such skill in this art.") (affirming summary judgment of invalidity).  "'In many patent cases expert testimony will not be necessary because the technology will be easily understandable without the need for expert

---

[5] The second step – comparison of the prior art to the patent at issue – proceeds from the perspective of a person of "ordinarily skill in the art" at the time of the invention.  *Scripps Clinic*, 927 F.2d at 1576.  Here, the ordinarily-skilled practitioner in the art of computerized purchasing control in 1997 possessed a high school education and basic familiarity with computer programming, purchasing controls and the use of credit cards.  Goodman Decl. ¶ 16.

explanatory testimony.'"  *Id*. at 1329, quoting *Centricut, LLC v. Esab Group, Inc*., 390 F.3d

1361, 1369 (Fed.Cir.2004).  The third party credit card technology described in the '360 Patent,

claiming a parent obtaining for a teen an allowance card using existing payment card company

infrastructure, is easily understandable and should not require expert testimony.  Nevertheless,

Defendants submit herewith the Declaration of Lawrence Goodman, one of the inventors of the

'513 Patent, to assist the Court as it may deem necessary.[6]

### B.    Only One Claim Term—"Funds"—Requires Construction

The Court need not "construe *undisputed* claim terms prior to issuing a summary

judgment of invalidity."  *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.,* 375 F. 3d 1341, 1350

(Fed. Cir. 2004).  "[D]istrict courts are not (and should not be) required to construe every

limitation present in a patent's asserted claims."  *02 Micro Int'l Ltd. v. Beyond Innovation Tech.*

*Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).  "[W]hen the parties do not dispute that the words of

the claims simply mean what they say, the district court is not required to add an additional layer

of complexity by 'constructing' the words of the claim merely to reiterate those words in a jury

instruction."  *Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1367 (Fed. Cir. 2004).

Here, with one exception, each of the claim terms should be given their plain and

ordinary meaning, requiring no further construction by the Court for the purposes of this motion.

*See CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) (finding heavy

presumption that the plain meaning of the claim language controls and can only be overcome in

---

[6] See *Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC* 381 F.3d 1142 (Fed. Cir. 2004) ("Typically, testimony concerning anticipation must be testimony from one skilled in the art and must identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference. The testimony is insufficient if it is merely conclusory.")  *See also Black & Decker Inc. v. Robert Bosch Tool Corp.,* 476 F. Supp. 2d 887, 892 (N.D. Ill. 2007) (technical expert's testimony merely conclusory and insufficient to establish anticipation).  While under the circumstances no expert testimony should be required here, the Goodman Declaration provides the requisite element-by-element analysis, claims construction and the explanations of the '513 Patent disclosures.

limited circumstances).  *See also* Goodman Decl., ¶ 11.  The terminology of credit card accounts, spending, and purchasing is familiar and straightforward.

The only exception to application of the plain-meaning rule to the '360 Patent is the claim term "funds," which the patentee explicitly defined in the specification.  Picciallo stipulated that "for purposes of the present invention, the term 'funds' is defined as including credit lines extended to account holders and third party recipients, as well as currency deposited by account holders."  *See* Thompson Decl., Ex. B at 6:51-53 ('360 Patent).  "When a patentee explicitly defines a claim term in the patent specification, the patentee's definition controls."  *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1380 (Fed. Cir. 2009).  Thus, the Court should construe the claim term "funds" to have the meaning adopted in the patent's specification and, specifically, to include credit lines, as well as currency deposited into accounts.

At the December 11, 2009, tutorial conducted at the request of the Court regarding the relevant technology (the "Tutorial"), RSS seemed to suggest that an "ability to be accumulated" limitation should some how be imported into the meaning of "funds."[7]  That would be improper.  A claim term must receive the meaning explicitly provided in the patent's specification.  *See Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 493 F.3d 1358, 1361 (Fed.Cir.2007) ("When a patentee defines a claim term, the patentee's definition governs").

---

[7]  When pressed by the Court to identify any basis in the patent claims for the accumulation limitation, RSS's counsel suggested that the word "funds" implies the ability to be accumulated.  Thompson Decl., Ex. E at 62:11 – 63:2 ("MR. LESKO: . . . I think the most important issue that was raised had to do with the funding of the cards. . . . [The claim] doesn't say the word 'accumulation,' but it's included within that [funding] concept.").

**C.      No Genuine Dispute Exists That Visa's '513 Patent Clearly And Convincingly Discloses Every Element Of The Asserted Claims Of The Patent-In-Suit**

There can be no real dispute that every element of the asserted claims is found in the '513 disclosure.  In their Statement of Material Facts, Defendants have set out, element by element, where each element is found in the Visa '513 Patent.  *See* Defendants' Statement Of Material Facts, pp. 3-10.  In addition, as noted, one of the inventors of the '513 Patent, Laurence Goodman, has provided a declaration tracing where and how each element of each claim was disclosed by the application.  Goodman Decl. at ¶¶ 17-33.  Based on the arguments asserted in the prosecution history and made by Plaintiff RSS to date, Defendants believe that RSS cannot in good faith dispute that the great majority of those claim elements are disclosed by the '513 Patent.  We therefore do not repeat the element-by-element analysis here.  We anticipate that the only issues RSS will raise in response to this motion are:  (1) Picciallo's assertion during prosecution that the prior art does not disclose a limitation on funds that "may be spent on particular classes of goods and services," and/or (2) Plaintiff's recent assertion at the Tutorial that the '360 patent requires "accumulation of funds."  We address these issues separately below.

1.      Visa's '513 Patent Clearly And Convincingly Discloses The Same Ability to Impose "Transaction Limits For Particular Classes of Good and Services" Claimed in the '360 Patent.

During prosecution, Picciallo summarized the final form of claim 27 as disclosing "an allowance account having periodic transaction limits for particular classes of goods and services."[8]  The remarks accompanying this amendment, which finalized the claim language,

---

[8] The Claim 27 reads in full:

A computer-based method for allocating funds in preestablished accounts for use by customers, comprising:
creating for each customer a customer account file containing a record of funds deposited for said customer;

asserted that "[t]his feature is not described, or even remotely suggested" in the cited prior art (that did not include the '513 Patent). Thompson Decl., Ex. C at 6 (RSS000180-187). The second sub-paragraph of claim 27 covers "periodic transaction limits on the amount of funds in said customer account file that may be spent on particular classes of goods and services in response to command instructions from the fund depositor" *Id.*, Ex. B at 14:51-54.

The '360 specification, however, does not explain how the transaction-limits on purchases of goods and services is implemented. As noted, the PTO rejected the application because it did not adequately instruct how to make and use (enable) the invention. Picciallo's two programming experts filled this gap, apparently to the satisfaction of the examiner, by pointing to the existing Merchant Classification Codes that "would be grouped according to type of business, *i.e.*, restaurants, department store, electronics store, and so forth." Thompson Decl., Ex. C at ¶ 9 (RSS000174-177). The fund depositor would select approved classifications or groups of classifications and set the periodic spending limits. *Id.*

Visa's '513 patent disclosed the setting of periodic spending limits where "[t]he company sets a spending limit at the cardholder level . . . for each period it wishes to track." *Id.*, Ex. A at 14:57-59. Visa disclosed setting limits on "particular classes of goods and services" by disclosing the step of "control[ling] Corporate card spending by defining subsets of the cardholder credit limit." *Id.* at 13:49-57. Taking advantage of the credit industry's classification

---

> setting periodic transaction limits on the amount of funds in said
>     customer account file that may be spent on particular classes of
>     goods and services in response to command instructions from the
>     fund depositor; and
> verifying each transfer from said customer account file requested by
>     said customer to determine whether the requested funds exceed the
>     transaction limit set for the goods or services to be purchased.

Thompson Decl., Ex. B at 14:47-58 ('360 Patent).

of merchants into nearly one thousand numbered categories called "merchant category codes" (or

"MCCs"), *see id.* at 7:61-64, Visa specifically disclosed setting spending limits in the '513

Patent based on MCC number – a feature permitting companies to limit or eliminate usage of

corporate cards at betting establishments or for cash withdrawals, as two examples.  *Id.*

Additionally, Visa made clear that these limits on particular classes of goods and services

resulted from "command instructions from the fund depositor."  *See id.* at 14:54-59 ("*[t]he*

*company* sets a spending limit at the cardholder level . . . for each period it wishes to track")

(emphasis added); *id.* at 13:49-50 ("*the company* may elect to control Corporate card spending

by defining subsets of the cardholder credit limit") (emphasis added).

        2.     <u>Whatever The "Accumulation" Actually Claimed by the '360 Patent</u>
                 <u>Covers, It Is Fully Disclosed By The '513 Patent.</u>

At the Tutorial RSS attempted to distinguish Visa's '513 Patent on grounds that Visa's

method allegedly does not allow funds allocated to employees to accumulate over time, but

rather provides regular credit lines which are refreshed periodically.  Thompson Decl., Ex. F at

28 (RSS tutorial slides) ("Visa's patent does not allow the [employee's] account to carry funds

over.").  This assertion was made in reference to the other independent claim of the '360 Patent

at issue here – the claim which RSS asserts against "teen cards" only – Claim 8:

> **8**. A computer-based method for allocating funds in preestablished
> accounts for use by customers, comprising:
>> creating for each customer a customer account file containing a record
>> of funds deposited for said customer;
>> **automatically transferring periodically to said account file**
>> **depositor funds for use by said customer;**
>> limiting the amount of funds in said customer account file that may be
>> spent on particular classes of goods and services in response to
>> command instructions from the fund depositor; and
>> verifying each transfer from said customer account file requested by
>> said customer to determine whether the requested funds exceed the
>> limit set for the goods or services to be purchased.

*Id.*, Ex. B at 13:29-42 (emphasis added.)  The highlighted claim element is apparently what counsel for RSS claims to cover the "accumulation" of funds. In the prosecution history, however, Mr. Picciallo did not mention any accumulation feature.  He summarized this claim as disclosing "an allowance account that is automatically and periodically funded."  Thompson Decl., Ex. C at ¶ 2 (RSS000156-158).

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (internal quotations omitted).  RSS's and Picciallo's alleged invention are limited to what is actually described in the claims.  Counsel for RSS conceded at the Tutorial that while the claim says "automatically transferring periodically . . . funds," it "doesn't say the word 'accumulation.'"  Thompson Decl., Ex. at 63:1-1 (Tutorial transcript).  Nevertheless, RSS asserts that "accumulation" is "included within the concept."  *Id.*  RSS did not cite to any claim language, specification, or prosecution history that supports its contention that the claims describe the concept of accumulation.  A patentee cannot overcome invalidating prior art by attempting to import a concept that is not described anywhere in the claims or the patent.  RSS is attempting to narrow the scope of a claim limitation to cover only a hypothetical, unclaimed concept.  As the Court recognized at the Tutorial, "But your point is, simply the fact that Picciallo doesn't mention a reset [to zero] means that we should draw the conclusion that the funds are, in fact, accumulating."  *Id.* at 63:20-22.  The claim, however, does not address the subject of accumulation of funds.  It requires "automatically transferring" of funds "periodically."  The patent defines "funds" to include credit lines and does not limit the definition to only credit lines that are not reset periodically.

None of the '360 claims in dispute can be saved by importing an accumulation requirement, which has no support in the claim language, specifications, written description, or prosecution history. *See Seachange Int'l, Inc.  v. C-COR, Inc.*, 413 F.3d 1361, 1377 (Fed. Cir. 2005) (declining to import a requirement that CPUs run third party applications in to the claim term "processor systems" when the requirement is not supported by the claims, specifications, written description, or prosecution history).   And "a plea for the import of a limitation to help preserve the validity of the asserted claims" is to no avail, where as here the claim term is not in any way ambiguous. *Id.*

The '513 Patent does plainly disclose Claim 8 of the '360 Patent's second sub-paragraph as written – "automatically transferring periodically said account file depositor funds for use by said customer."  Visa's '513 Patent discloses the transfer of funds from the company (the "depositor [of] funds" in Mr. Picciallo's words) to the cardholder ( "customer") on a daily, monthly, or company-defined cycle. *See id.*, Ex. A at 14:55-15:27.  Specifically, Visa's method uses variables named "daily spending limit counter," "calendar month spending limit counter," and "company-defined spending limit counter" to set and track spending to ensure that no cardholder exceeds her limit in any specified period. *See id.*, Ex. A at 14:55-59 ("The company sets a spending limit at the cardholder level . . . for each period it wishes to track.").  After incrementing the relevant counter with every purchase made during each day, month, or company-defined period, the counter is "refreshed (set to zero)" at the end of that period – meaning that the company replenishes each cardholder's account with funds (or refreshed credit line) at the end of each period. *E.g., id.* at 14:67-15:2 ("A daily spending limit counter is used to accumulate spending. This counter is refreshed at the end of each 24-hour period."); *id.* 15:4-6 ("A calendar month spending limit counter is refreshed (set to zero) at the end of the last day of

- 14 -

the calendar month."). Visa's method operates in a fashion "requiring no human intervention" – or "automatically" in the phrasing of the patent-in-suit. *Id.* at 2:35. Accordingly, Visa's '513 Patent discloses automatic and periodic transfers of funds from the depositor to the cardholder as set forth in claim 8 of the '360 Patent.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court find that each of the asserted claims 8-17 and 27-36 of U.S. Patent 6,044,360 invalid as a matter of law in view of U.S. Patent No. 5,500,513, and grant summary judgment for Defendants. Fed. R. Civ. P. 56(b).

Dated:  February 5, 2010

I represent that concurrence in the filing of this document has been obtained from each of the other signatories which shall serve in lieu of their signatures on this document.

Respectfully submitted,

By:  _____/s/ Roderick M. Thompson_____
       Roderick M. Thompson
       Andrew Leibnitz
       Eugene Y. Mar
       FARELLA BRAUN + MARTEL LLP
       235 Montgomery Street, 17th Floor
       San Francisco, CA  94104
       Telephone:  (415) 954-4400
       Facsimile:   (415) 954-4480
       Email:  rthompson@fbm.com

       Frederick H. Cohen
       Oscar L. Alcantara
       GOLDBERG KOHN BELL BLACK
       ROSENBLOOM & MORITZ, LTD.
       55 East Monroe Street, Suite 3300
       Chicago, IL  60603
       Telephone:  (312) 201-4000

*COUNSEL FOR DEFENDANTS*
*VISA U.S.A. INC., WACHOVIA CORP., AND*
*COMMERCE BANCSHARES, INC.*

By:    <u>/s/ Michael Patrick Dulin</u>
    Michael Patrick Dulin
    William Terence Slamkowski
    HENSLEY KIM & HOLZER, LLC

*COUNSEL FOR DEFENDANTS ALLOW CARD OF AMERICA, INC. and PALM DESERT INVESTMENTS*

By:    <u>/s/ David S. Bloch</u>
    David S. Bloch
    Michael Louis Brody
    Chaitanya Maddali
    WINSTON & STRAWN LLP

*COUNSEL FOR DEFENDANTS DISCOVER FINANCIAL SERVICES and DISCOVER BANK*

By:    <u>/s/ Keith J. Grady</u>
    Keith J. Grady
    Graham L.W. Day
    POLSINELLI SHUGHART PC

*COUNSEL FOR DEFENDANT UMB FINANCIAL CORP.*

By:    <u>/s/ Lawrence K. Nodine</u>
    Lawrence K. Nodine
    NEEDLE & ROSENBERG, P.C.

*COUNSEL FOR DEFENDANT FIFTH THIRD BANCORP*

- 16 -

24688\2154983.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 5, 2010, all counsel of record who are deemed to have

consented to electronic service are being served with a copy of the foregoing instrument via the

Court's CM/ECF filing system.

/s/ Roderick M. Thompson