# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| RESTRICTED SPENDING SOLUTIONS, LLC, | ) | |
| | ) | |
| *Plaintiff,* | ) | Case No: 1:09-cv-03785-RRP-NRN |
| | ) | |
| v. | ) | |
| | ) | |
| ALLOW CARD OF AMERICA, INC.; | ) | ***JURY TRIAL DEMANDED*** |
| PALM DESERT INVESTMENTS; | ) | |
| WACHOVIA CORP.; | ) | |
| DISCOVER FINANCIAL SERVICES; | ) | |
| DISCOVER BANK | ) | |
| COMMERCE BANCSHARES, INC.; | ) | |
| UMB FINANCIAL CORP.; | ) | |
| FIFTH THIRD BANCORP; and | ) | |
| VISA U.S.A., INC.; | ) | |
| | ) | |
| *Defendants.* | ) | |

---

## PLAINTIFF RESTRICTED SPENDING SOLUTIONS, LLC'S
### OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF
### INVALIDITY OF PLAINTIFF'S U.S. PATENT NO. 6,044,360
### IN VIEW OF VISA'S U.S. PATENT NO. 5,500,513

Paul A. Lesko, IL #6288806
Jo Anna Pollock, IL #6273491
Stephen C. Smith, IL #6279828
707 Berkshire Blvd.
P.O. Box 521
East Alton, IL 62024
Ph: (618) 259-2222
Fax: (618) 259-2251

Local Counsel:

Martin Jerisat, IL #6270027
Law Office of Martin Jerisat
10 S. LaSalle Street, Ste 3300
Chicago, IL 60603
Ph: (312) 332-0333

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS..................................................................... i

TABLE OF AUTHORITIES ............................................................. ii

I.     INTRODUCTION.................................................................. 1

II.    BACKGROUND ................................................................... 1

    A.    Mr. Picciallo's Patent............................................... 1

    B.    The Visa Patent......................................................... 5

        1.    The Visa patent does not disclose periodic allowance accounts... 5

        2.    The Visa patent does not disclose the ability to accumulate funds.. 5

        3.    The Visa patent is not invalidating prior art......................... 6

III.    CASE LAW.......................................................................... 7

    A.    A patent is presumed valid...................................... 7

    B.    Anticipation............................................................. 7

    C.    Summary Judgment.................................................. 7

IV.    ARGUMENT........................................................................ 8

    A.    The Visa patent does not anticipate any of the asserted claims.............. 8

        1.    At a minimum, the Visa patent does not disclose the periodic allowance of claims 8-19, 34 and 35 of the Picciallo patent......... 9

        2.    The Visa patent does not disclose the same type of "funds" as the Picciallo patent.................................................. 9

            a.    The Visa patent does not disclose Picciallo's funds............ 11

                i.    The Visa Patent does not disclose accumulating funds; it is a use it or lose it card.................................... 12

                ii.    The Visa patent does not disclose "transferring" of funds or funds "deposited."........................................ 13

B.    Defendants' motion should also be denied because defendants' expert is biased, and therefore a credibility determination must be made by a jury.................................................................... 14

V.    CONCLUSION.......................................................... 15

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                      <u>Page</u>

*Al-Site Corp.v. VSI Int'l, Inc.,* ............................................................................   7
    174 F.3d 1308 (Fed. Cir. 1999)

*Anderson v. Liberty Lobby, Inc.,* ..........................................................................   8
    477 U.S. 242 (1986)

*Celotex Corp. v. Catrett,* ......................................................................................   8
    477 U.S. 317 (1986)

*Chimie v. PPG Indus, Inc.,* ...................................................................................   10
    402 F.3d 1371 (Fed. Cir. 2005)

*C.R. Bard, Inc. v. M3 Sys., Inc.,* ...........................................................................   7
    157 F.3d 1340 (Fed. Cir. 1998)

*Intervet Am., Inc. v. Kee-Vet Labs., Inc.,* ..............................................................   7
    887 F.2d 1050 (Fed. Cir. 1989)

*Minn. Mining & Mfg. v. Chemque, Inc.,* ...............................................................   7
    52 F.3d 967 (Fed. Cir. 1995)

*Net MoneyIN, Inc. v. VeriSign, Inc.,* ......................................................................   8
    545 F.3d 1359 (Fed. Cir. 2008)

*Philips v. AWH Corp.,* ...........................................................................................   10
    415 F.3d 1303 (Fed. Cir. 2005)

*PIN/NIP, Inc. v. Platte Chem. Co.,* ........................................................................   8
    304 F.3d 1235 (Fed. Cir. 2002)

*Scripps Clinic & Research Founda. v. Genentech, Inc.,* ........................................   7
    927 F.2d 1565 (Fed. Cir. 1991)

*Simpson v. Merchants Recovery Bureau,* ................................................................   8
    171 F.3d 546 (7th Cir. 1999)

*Sunbeam Prods., Inc. v. Homedics, Inc.,* ...............................................................   8
    670 F.Supp.2d 873 (W.D. Wis. 2009)

*Vitronics Corp. v. Conceptronic, Inc.,* ...................................................................   10
    90 F.3d 1576 (Fed. Cir. 1996)

Statutes

FED. R. CIV. P. 56(c)(2)……………………………………………..   8

35 U.S.C. § 102………………………………………………... ..9, 15

35 U.S.C. § 102(b)……………………………….......................   1

35 U.S.C. § 282 ……………………………………………·…   7

## I.   **INTRODUCTION**

Restricted Spending Solutions, LLC ("RSS") alleges that the defendants infringe U.S. Patent No. 6,044,360 ("the Picciallo patent") through their making, using, offering for sale and selling of certain allowance and corporate cards. Defendants move for summary judgment that the asserted claims of the Picciallo patent are invalid under 35 U.S.C. §§ 102(b) and (e) in view of U.S. Patent No. 5,500,513 ("the Visa patent" or "Langhans"). If a prior art reference lacks just one claim element within its four corners, it is not invalidating prior art under 35 U.S.C. §102(b). Defendants' motion should be denied because the Visa patent lacks at least two claim elements: 1) it lacks funds; and 2) it does not disclose allowance payments. Because the Visa patent lacks these elements, the Court should deny defendants' motion and may even grant summary judgment of non-invalidity in view of the Visa patent *in favor of RSS*.

Alternatively, summary judgment is improper because defendants' expert is an inventor of the Visa patent and a former Visa employee (and thus biased and interested party). Bias and credibility determinations should be made by a jury, and summary judgment is improper.

## II.   **BACKGROUND**

### A.   **Mr. Picciallo's patent**

While managing a roller-skating rink in 1996, Mr. Michael Picciallo noticed that parents dropped their children at the roller-skating rink with money, but the children would *not* enter the roller-skating rink. Instead, the children would depart and spend their money elsewhere. Parents would later pick up their children from the roller-skating rink, ignorant as to where their children actually spent their money. Inspired, Mr. Picciallo invented the concept of embodying an allowance into a card with spending controls. Mr. Picciallo filed his patent application on this concept in 1996 and was awarded a patent by the United States Patent Office in 2000.

Mr. Picciallo's invention involves a "parent" who funds a "child" account for use by a "child" cardholder.[1] The "child" cardholder can use the card anywhere, but limitations chosen by the "parent" are placed on what goods and services can be purchased. Docket No. 210, Ex. B at 2:24-29 (Picciallo Patent). This gives the "parent" security because the "parent" knows the card cannot be used for unauthorized purchases. *Id.* at 2:24-29, 6:61-62. Additionally, funds from the "parent" are automatically and/or periodically deposited into the "child" account— which embodies the allowance. *Id.* at 1:12-15, 3:28-34, 11:55-64. This frees the "parent" from performing additional actions to ensure the "child" receives periodic funds. *Id.*

The Picciallo patent is grounded in the concept of allowances. Decl. of Dr. Lewis Mandell at ¶¶30-31. The ability to accumulate funds is paramount to allowances. *Id.* Even defendants' expert, Mr. Goodman, concedes that allowances require the ability to save, or accumulate. Lesko Decl., Exhibit A at 88:22-89:5 (Goodman Dep. Tr.).

There are three types of allowances: outright, conditional and *ad hoc*. Mandell Decl. at ¶23. Outright allowances are those paid to a child on a periodic basis regardless of tasks performed by the child. *Id.* Conditional allowances are periodic allowances paid to a child with the assumption that the child is fulfilling a task (e.g., chores). *Id.* In practice, conditional allowances are similar to how a salaried employee is paid. *Id.* For this reason, both conditional and outright allowances are regular allowances, because they are paid on a regular (e.g., periodic) basis. *Id. Ad hoc* allowances are those paid to a child when the child asks for money. *Id. Ad hoc* allowances, are not necessarily regularly periodic.

---

[1] While the original concept of the Picciallo patent started with an actual parent-child allowance, it expanded to other "parent"(e.g., a casino)/ "child" (e.g., casino guests) relationships.

An example of a regular allowance shows accumulation:  A child receives $25 per month from his parent. *Id.* at 26. During the first month, the child spends $10. *Id.* At the beginning of the second month, the child receives an additional $25 (the next allowance payment). *Id.* The child now has accumulated $40 ($15 + $25 = $40). *Id.* Because allowance payments accumulate, the child learns the importance of saving and of "budgeting money and managing cash flow"—a Picciallo patent stated goal. Docket No. 210, Ex. B at 6:60-61 (Picciallo Patent).

Without the ability to accumulate funds over time, a less-positive lesson is taught. Mandell Decl. at ¶27-28. Without accumulation, the child really has a $25 monthly spending limit. If the child only spends $10, he will, in essence, only receive $10 the next month (due to $15 left over, and $10 +$15 = $25) and have $25 to spend. If in that same month, he spends the entire $25, at the beginning of the next month he still will receive $25. No matter how much, or little, the child spends in a month, the next month he will have $25 to spend. The lesson learned here is use it, or lose it; there is no incentive not to spend the entire $25 every month. *Id.*

While defendants admit in their brief[2] that the Picciallo patent covers allowances, it is also taught throughout the Picciallo patent specification[3] and claims. Even defendants' expert confirms that the Picciallo patent covers allowances and accumulation necessary for allowances.

> MR. LESKO:  Q.  If I could maybe explore this a little bit more. Let's say there is an account established under the Picciallo methodology.  Let's say it's for a parent to a child and the parent will give the child $5 a month, it's set up that $5 will be transferred periodically to the child.  If that child does not spend that $5 within a month, what is the record of funds the following month for that child?
> A.      Assuming the parent provides another $5, there may be $10 in the account.

---

[2] Docket No. 207 at 8 ("The third party credit card technology described in the Picciallo patent, claiming a parent obtaining for a teen an **allowance** card..."(emphasis added)); *See also, id.* at 2 n.1; Pl.'s Stmt of Mat. Facts at ¶37.
[3] *See, e.g.,* Docket No. 210, Ex. B at 1:12-15; 3:28-34 (Picciallo Patent).

Lesko Decl., Ex. A at 89:14-89:-24 (Goodman Dep. Tr.).  An allowance is an important

component of the Picciallo patent, and the claims terms must be construed to embody it.

For this action, RSS asserts claims 8-17, and 27-36.  Claims 8 and 27 are independent,

and claims 9-17 and 28-36 depend from claims 8 and 27, respectively.  *Id.* at 13:29-32; 14:47-58.

The asserted claims cover, *inter alia*, two types of cards:  regular (i.e., periodic) allowance cards

(claims 8-17, 34 and 35) and corporate/allowance cards (claims 27-33 and 36).[4]  Mandell Decl.

at ¶33-35.  Claim 8, reproduced below, embodies the regular allowance card:

> A computer-based method for allocating **funds** in preestablished accounts for use
> by customers, comprising:
> creating for each customer a customer account file containing a record of **funds
> deposited** for said customer;
> **automatically transferring periodically to said account file depositor funds
> for use by said customer;**
> limiting the amount of **funds** in said customer account file that may be spent on
> particular classes of goods and services in response to command instructions from
> the fund depositor; and
> verifying each transfer from said customer account file requested by said
> customer to determine whether the requested **funds** exceed the limit set for the
> goods or services to be purchased.

Docket No. 210, Ex. B at 13:28-34 (Picciallo Patent) (emphasis added).  The regular allowance

concept is embodied in the "automatically transferring periodically to said account file depositor

funds for use by said customer" limitation, because a regular allowance is a periodic transfer of

money.  Mandell Decl. at ¶55.  Claim 27, on the other hand, is broader and embodies all three

allowances (outright, conditional and *ad hoc*) and corporate cards.  *Id.* at ¶35:

> A computer-based method for allocating funds in preestablished accounts for use
> by customers, comprising:
> creating for each customer a customer account file containing a record of **funds
> deposited** for said customer;
> setting periodic transaction limits on the amount of **funds** in said customer
> account file that may be spent on particular classes of goods and services in

---

[4] Claim 8 can be utilized for corporate cards also where those cards work like a parent/child allowance.

response to command instructions from the fund depositor; and
verifying each transfer from said customer account file requested by said
customer to determine whether the requested **funds** exceed the transaction limit
set for the goods or services to be purchased.

Docket No. 210, Ex. B at 14:47-58 (Picciallo Patent) (emphasis added).  Claims 28-37 depend

from claim 27.  *Id.* at 14:59-16:3.  Independent claim 27 and dependent claims 28-33 and 36 do

not require a periodic transfer of funds.  *Id.* at 14:47-15:7; 16:1-3.  Dependent claims 34 and 35,

on the other hand, add limitations to claim 27 ("periodically" and "weekly or monthly,"

respectively) which transforms claim 27 into an allowance card.  *Id.* at 15:8-11.

**B.     The Visa Patent**

The defendants in this action are giants in the banking and credit card industries.  These

industry giants poured through all of their prior art, and selected the Visa-owned Langhans

patent for this motion.  Docket No. 136, Rule 26(f)(1) Report at 5-6.  The strongest reference

defendants could find, however, is a "use it, or lose it" card, not an allowance card.  Docket No.

207, Defendants' Memorandum at 2 n.1; Mandell Decl. at ¶28-29,41-42.  Thus, it lacks 1) the

ability to accumulate funds and 2) periodic allowance accounts.  *Id.* at 38,41-47,55-59.

**1.   The Visa patent does not disclose periodic allowance accounts.**

. Given the Picciallo patent's focus on allowances, the Visa patent would need to disclose

allowances.  It does not.  *Id.* at 55-59; Pl.'s Statement of Material Facts ("SMF") at ¶30.

Defendants' expert even admits the Visa patent does not use the term "allowance."  Lesko Decl.,

Ex. A at 108:3-10 (Goodman Dep. Tr.).

**2.   The Visa patent does not disclose the ability to accumulate funds.**

Subsumed in the concept of allowances is the ability to accumulate funds.  Mandell Decl.

at ¶25.  The Visa patent, however, does not disclose the accumulation of funds; instead, it

focuses on "spending limits." Docket No. 210, Ex. A at 14:53-16:16 (Visa Patent); Mandell

Decl. at ¶38; SMF ¶39. These limits do not accumulate—they "refresh." Docket No. 210, Ex.

A at 15:2-15:13 (Visa Patent); Mandell Decl. at ¶38; SMF ¶38. Therefore, if a Visa cardholder

has a $50 monthly limit, and only spends $40, the next month his limit is "refreshed" to $50; it

does not accumulate to $60. Docket No. 210, Ex. A at 15:2-15:13 (Visa Patent); *see e.g.*,

Mandell Decl. at ¶45; SMF ¶38. Defendants' expert's testimony confirms this.

> Q.    Okay. Turning to the Langhans patent, if a -- let's say -- you say it could
> work under any hierarchy. So let's say there's a parent/child hierarchy that's set
> up. If the spending limit is set for $5 under the Langhans patent, if the child
> doesn't use that $5 within a month, what does the counter read the following
> month?
> A.    As you have defined counter,[5] it would read zero.
> Q.    So the counter for the first month would read zero?
> A.    Um-hmm.
> Q.    And if there's no spending of funds, the counter for the second month
> would be zero also; correct?
> A.    That's correct.

Lesko Decl., Ex. A at 89:25-90:15 (Goodman Dep. Tr.).

> Q.    So let's say in month one the counter is at zero and the spending limit is at
> 500. If no purchases are made during that month, month two comes around, the
> counter is still at zero and the spending limit is still at 500; is that correct?
> A.    The counter remains at zero because nothing changed. At the end of the
> cycle the $500 is reset to $500. Even though nothing had been spent, the counter
> -- or the spending limit is reset automatically by the system.

*Id.* at 98:20-99:4. As Mr. Goodman's testimony confirms, the Visa patent does not accumulate

funds. Mandell Decl. at ¶38. This is appropriate, because the Visa patent places "spending

limits" on employees. Mandell Dec. at ¶37. Accumulation in this context would allow spending

limits" to *increase* each month. This would not effectively limit employee spending.

### 3.   The Visa patent is not invalidating prior art.

---

[5] It is unclear what definition Mr. Goodman is referring to as no definition was provided by counsel. To the
contrary, Mr. Goodman's testimony is consistent with the Visa patent's explanation of how its counters work.

Either of the two above differences are sufficient to save the asserted claims; both show how weak the Visa patent is as prior art. If a leader like Visa had not developed the concept of Mr. Picciallo's patent (defendants assert the Visa patent is the best prior art), no one did.

## III.   CASE LAW

### A.   A patent is presumed valid.

Issued patents have a strong presumption of validity in infringement proceedings. *See* 35 U.S.C. § 282. Because of this, the accused infringer bears the burden of showing patent invalidity by clear and convincing evidence. *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1323 (Fed. Cir.1999). "The presumption of validity under 35 U.S.C. § 282 carries with it a presumption that the Examiner did his duty and knew what claims he was allowing." *Id.* (*citing Intervet Am., Inc. v. Kee-Vet Labs., Inc.*, 887 F.2d 1050, 1054 (Fed.Cir.1989)).

### B.   Anticipation

Anticipation is a question of fact, that may be decided on summary judgment when there are no genuine disputes as to whether the limitations of the claimed invention are disclosed by the prior art reference(s). *Minn. Mining & Mfg. v. Chemque, Inc.*, 303 F.3d 1294, 1301 (Fed. Cir. 2002). To invalidate a patent via the doctrine of anticipation, every single claim element must be found in a single prior art reference. *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1576 (Fed. Cir. 1991). "There must be no difference between the claimed invention and the reference disclosure, as viewed by a person of ordinary skill in the field of the invention." *Id.* If a single claim element is absent from an alleged prior art reference, there cannot be anticipation. *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1349 (Fed.Cir.1998).

### C.   Summary Judgment

7

It is the party seeking summary judgment who bears the burden of informing the court of the basis of its motion and of identifying the portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S 242 (1986). The Court must view the evidence presented on the motion in the light most favorable to the opposing party. *Id.* at 255.

A trial court has the power to enter summary judgments *sua sponte* so long both sides have had notice and fair opportunity to be heard. *Sunbeam Prods., Inc. v. Homedics, Inc.*, 670 F. Supp.2d 873, 876 (W.D. Wis. 2009) (*citing Simpson v. Merchants Recovery Bureau*, 171 F.3d 546, 549 (7th Cir. 1999). The Federal Circuit has upheld a *sua sponte* finding of non-anticipation where the prior art reference failed to constitute clear and convincing evidence that supported a finding of anticipation. *PIN/NIP, Inc. v. Platte Chem. Co.*, 304 F.3d 1235, 1245 (Fed. Cir. 2002).

## IV.   ARGUMENT

### A. The Visa patent does not anticipate any of the asserted claims.

To prove anticipation, defendants "must show that the four corners of a single, prior art document describe every element of the claimed invention." *Net MoneyIN, Inc. v. VeriSign, Inc,* 545 F.3d 1359, 1369 (Fed. Cir. 2008) (internal quotations omitted). That same document must also "disclose those elements arranged as in the claim." *Id.* (internal quotations omitted). Thus,

"unless a reference discloses within the four corners of the document not only all of the limitations claimed but also all of the limitations arranged or combined in the same way as recited in the claim, it cannot be said to prove prior invention of the thing claimed and, thus, cannot anticipate under 35 U.S.C. § 102." *Id.* at 1371.

### 1. <u>At a minimum, the Visa Patent does not disclose the periodic allowance of claims 8-17, 34 and 35 of the Picciallo patent.</u>

The Visa patent does not disclose a periodic allowance, the concept incorporated into claims 8-17 and 34-35 of the Picciallo patent. Mandell Decl. at ¶34,36,54-58. Defendants' expert admits that the term "allowance" is not disclosed, and Mr. Goodman's alleged support for allowances from the Visa patent does not discuss the concept of allowance. Lesko Decl., Ex. A at 108:3-10 (Goodman Dep. Tr.); SMF at ¶¶33-36. In view that the Visa patent does not disclose allowances, at least claims 8-17 and 34-35 are not anticipated. Mandell Decl. at ¶¶34,36,54-58.

### 2. <u>The Visa patent does not disclose the same type of "funds" as the Picciallo patent.</u>

Another limitation which the Visa patent lacks is "funds"—which appears in all of the asserted claims. Mandell Decl. at ¶¶39-42. The Picciallo patent's "funds" have the ability to accumulate over time (*e.g.*, as an allowance), and be "transferred," and/or "deposited." *Id.* at 40. Necessarily, the Picciallo patent's use of the term "funds" must include these concepts. To do this, the term "funds" must be construed to mean "a supply of money including credit lines extended to account holders and third party recipients, as well as currency deposited by account holders, which can accumulate, be transferred and deposited."

The term "funds" must be construed according to the principles provided by the Federal Circuit. Under such an analysis, the words of the claims are examined first to define the scope of

the patented invention. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). In both claims 8 and 27 funds must be "deposited." Docket No. 210, Ex. B at 13:32; 14:50 (Picciallo Patent). Additionally, claim 8 discusses "...transferring ... depositor funds," so funds must have the ability to be transferred. *Id.* 13:33-34. Claim 8 also requires funds to be "transferred periodically." *Id.* This limitation requires the addition of more funds to the account at specified intervals. Mandell Decl. at ¶¶24-25,34. As additional money is transferred into the account, more funds are available. *Id.* This is accumulation. *Id.* Given the focus on depositing, transfer and accumulating funds, "funds" must be construed as being able to perform these steps.

Beyond the claims, support exists from the specification which the Federal Circuit regards as "highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics, Corp.*, 90 F.3d at 1582. The concept of allowance payments *and necessarily accumulation* are discussed throughout (*see, e.g.*, Docket No. 210, Ex. B at 1:12-15;3:28-34;11:55-64 (Picciallo Patent)) and within the preferred embodiment. *Id.* at 3:24-34. Because allowance/accumulation is within the preferred embodiment, a construction that would not allow for accumulation would rarely, if ever, be correct. *Chimie v. PPG Indus, Inc.*, 402 F.3d 1371, 1377 (Fed. Cir. 2005). Also, the term "deposited" is used in conjunction with the funds (or currency) 18 times in the specification, and the term "transfer" appears over 30 times in conjunction with funds.[6] The specification therefore requires the definition of funds to include the ability to accumulate, be transferred or deposited.

Under a *Philips v. AWH Corp.* claim construction analysis, the prosecution history is also consulted. 415 F.3d 1303, 1317 (Fed. Cir. 2005). The prosecution history here emphasizes that

---

[6] *See, e.g.*, Docket No. 210, Ex. B at 2:38; 41, 42; 4:10, 13, 14; 5:26, 38; 6:2, 13, 53; 9:20, 35; 10:28-29, 31, 33; 11:64, 66 ((Picciallo Patent) (for funds)); 1:12, 16-17; 2:11, 19, 26, 31, 43, 46, 64, *etc.* (Picciallo Patent (for transfer)).

allowances and therefore accumulation are required.  Defendants acknowledged that claim 8

covers an allowance/accumulation account.  *See* Docket No. 207 at 13 ("He summarized this

claim as disclosing 'an allowance account that is automatically and periodically funded.'").

Defendants also acknowledge in their brief that, "[d]uring prosecution, Picciallo summarized the

final form of claim 27 as disclosing 'an allowance account having periodic transaction limits for

particular classes of goods and services.'"  *Id.* at 10.  As defendants concede, the prosecution

history confirms "funds" requires an allowance, and necessarily accumulation.

The entirety of the intrinsic evidence requires the construction of funds to include

accumulation, transferring and depositing.  RSS's construction should therefore be adopted.

Defendants' construction, on the other hand, is incomplete; it disregards the entirety of

the intrinsic evidence.  Defendants rely upon one clause that states "the term 'funds' is defined

**as including** credit lines extended to account holders and third party recipients, as well as

currency deposited by account holders."  Docket No. 210, Ex. B at 6:51-53 (Picciallo Patent)

(emphasis added).  While RSS agrees funds can arise from "credit lines...or currency," this

section merely states the definition should *include* "credit lines...and currency"; it is not a

comprehensive definition for funds, just that "lines of credit...and currency" need to be

"include[d]."  *Id.*  Because this is the only support for defendants, their definition is incomplete

as it does not address accumulation, transferring or depositing.  Notably, defendants' expert Mr.

Goodman acknowledged that the record of funds of Picciallo *increases* as funds are transferred.

Lesko Decl., Ex. A at 89:14-89:24 (Goodman Dep. Tr.).  Mr. Goodman agrees that funds require

the ability to accumulate.  This emphasizes that defendants' construction is incomplete.

### a.  <u>The Visa patent does not disclose Picciallo's funds.</u>

The term "funds" appears in both independent claims 8 and 27 of the Picciallo patent, and

necessarily in the claims which depend from these claims. Docket No. 210, Ex. B at 13:28-16:3

(Picciallo Patent). This constitutes the entirety of the asserted claims. Therefore, if the Visa

patent is to be invalidating, it would need to disclose funds. In view of RSS's proposed

construction, the Visa patent does not disclose accumulation, transferring or depositing of funds.

### i. **The Visa Patent does not disclose accumulating funds; it is a use it or lose it card.**

The Visa Patent does not accumulate funds; instead, it utilizes spending limit counters

that cannot record accumulation. Mandell Decl. at ¶38. As Mr. Goodman testified:

> Q.    Okay. Turning to the Langhans patent, if a -- let's say -- you say it could
> work under any hierarchy. So let's say there's a parent/child hierarchy that's set
> up. If the spending limit is set for $5 under the Langhans patent, if the child
> doesn't use that $5 within a month, what does the counter read the following
> month?
> A.    As you have defined counter, it would read zero.
> Q.    So the counter for the first month would read zero?
> A.    Um-hmm.
> Q.    And if there's no spending of funds, the counter for the second month
> would be zero also; correct?
> A.    That's correct.

Lesko Decl., Ex. A at 89:25-90:15 (Goodman Dep. Tr.). Because the spending limit is reset to

zero, the past balance is eliminated. *Id.*; Mandell Decl. at ¶45. The Visa patent confirms that

"refreshes" eliminate any past balance, thereby not allowing the card to carry a balance forward.

Docket No. 210, Ex. A at 14:55-15:6 (Visa Patent). The Visa card then is a use it, or lose it card.

Mandell Decl. at ¶28. Without the ability to carry over any unused/unspent spending limits, the

Visa patent does not embody the concept of accumulation. *Id.*; SMF at ¶44.

Defendants also fail to identify evidence of accumulation in the Visa patent; their summary judgment brief is silent on this issue and when defendants' expert was asked to identify all sources of accumulation from the Visa patent, he identified[7] only the following two sections:

> In addition to controlling spending using the cardholder credit limit, the company may elect to control Corporate card spending by defining subsets of the cardholder credit limit. The most common reason to do this is to control cash advances.

Docket No. 210, Ex. A at 13:49-56 (Visa Patent).

> As will be understood by those familiar with the art, the present invention may be embodied in other specific forms without departing from the spirit or essential characteristics thereof. For example, different combinations or orders of tests could be used, or different numbers of variable hierarchies could be provided. Accordingly, the disclosure of the preferred embodiments of the invention is intended to be illustrative, but not limiting, of the scope of the invention which is set forth in the following claims.

*Id.* at 17:11-18. Neither section discloses accumulation. Mandell Decl. at ¶¶43,45; SMF at ¶¶40-43. The quotation from column 13 is from the "Cash Advance Credit Limit" section, which discusses cash advances. Docket No. 210, Ex. A at 13:49-56 (Visa Patent). Importantly, this section states the cash advance is a "subset[] of the cardholder credit limit." *Id.* Because the cash advance is merely a "subset" of the credit limit, after a "refresh" both it (and the credit limit) are reset. Mandell Decl. at ¶45. Again, there is no carry over from the prior period after a "refresh." *Id.* This section does not support defendants' position. Similarly, the column 17 quotation provides no specific support for accumulation over time. Mandell Decl. at ¶46.

There is no support that the Visa patent accumulates funds, and therefore it lacks the funds of Picciallo. Mandell Decl. at ¶39-47. It cannot then invalidate *any* asserted claim. *Id.*

      **ii.**  **The Visa patent does not disclose "transferring" of funds or funds "deposited."**

---

[7] Lesko Decl., Ex. A at 105:16-107:13 (Goodman Dep. Tr.).

Claims 8-17 of the Picciallo patent require "…transferring…" of funds and claims 8-17 and 27-36 require funds be "deposited." Docket No. 210, Ex. B at 13:35 (transferring) (Picciallo Patent); 13:32 (deposited), 14:50 (deposited) (Picciallo Patent). Either term (transferring or depositing) should be read to include the same concept: a movement of funds from one place to another. Mandell Decl. at ¶48. If the Visa patent lacks these steps, it is not invalidating art.

The Visa patent does not transfer or deposit funds. *Id.* The term "transfer" does not appear in the Visa patent with the concept of funds; it only uses this term when it discusses transferring accounts from one part of the hierarchy to another. Docket No. 210, Ex. A at 9:42-47, 10:58, 11:22-29 (Visa Patent); Mandell Decl. at ¶50; SMF at ¶46. Similarly, the term "deposit" does not appear in the Visa patent. Mandell Decl. at ¶50; SMF at ¶48. The Visa patent then does not "transfer" or "deposit" funds. Mandell Decl. at ¶¶50-53; SMF at ¶47.

Mr. Goodman also confirmed the Visa patent does not "transfer" funds when he admitted that the term "transfer" should be viewed as a "colloquialism." Lesko Decl., Ex. A at 96:25-100:1 (Goodman Dep. Tr.). "Transfer," however, is not a colloquialism—it is a requirement. Per his own testimony, funds are not moved from one place to another—therefore, nothing is transferred. *Id.* The Visa patent then does not "transfer" funds. Mandell Decl. at ¶¶51-52.

**B. Defendants' motion should also be denied because defendants' expert is biased, and therefore a credibility determination must be made by a jury.**

Summary judgment is also not appropriate because the sole witness upon which defendants rely is an interested witness. His bias and credibility must be judged by a jury. Mr. Goodman is a former Visa employee (he worked there for 14 years). Visa treated him very well

both while he was there and after he left,[8] and is now paying him for his time on this case. Docket No. 209, ¶¶6, 7, 10; Lesko Decl., Ex. A at 27:18-22 (Goodman Dep. Tr.).

Beyond his inherent bias in favor of Visa, Mr. Goodman is a named inventor on the Visa patent—the prior art that Visa is asserting against the Picciallo patent. Mr. Goodman's pride leads him to stretch his invention beyond the four corners of the patent. This is shown by Mr. Goodman's repeated reliance on column 17, lines 11 through 18 of the Visa patent. *See, e.g.*, Docket No. 210, Ex. A at 102:8-20; 107:2-9; 108:8-10; 121:25-124:2. When Mr. Goodman struggled to find explicit support within his patent, he referred to the following language: "The present invention may be embodied in other specific forms without departing from the spirit or essential characteristics thereof." Thus, RSS submits that Mr. Goodman is an interested witness with bias towards Visa and as an inventor, and that a jury should judge his credibility or bias.

## V.   **CONCLUSION**

For the reasons stated above, the asserted claims of the Picciallo patent are not invalid in view of the Visa patent under 35 U.S.C. §§ 102. The Visa patent lacks an allowance and accumulation. In view of this, summary judgment should be granted *in favor of RSS* for non-invalidity in view of the Visa patent. At a minimum, a genuine issue of material fact exists as RSS has shown that the claim limitations defendants assert appear in the Visa patent, are in fact, lacking. Alternatively, because defendants' expert is biased, credibility must be determined by a jury, which would require denial of defendants' summary judgment motion.

---

[8] Visa gave Mr. Goodman an early retirement package in 1997 that "was close to a half a million dollars." Lesko Decl., Ex. A at 25:19-21, 38:4 (Goodman Dep. Tr.). This money provided Mr. Goodman with "a comfortable amount of money" allowing him not to "have to work for about a year and a half" so he could finish an educational program and start his time towards licensure as counselor. *Id.* at 26:7-13. Mr. Goodman testified that this "was just a very good timely situation for me so I could move into another career that I could do for the rest of my life." *Id.* at 26:7-13. While still a Visa employee, Visa was "kind enough to actually provide some of [his] tuition costs for that year, even though it had nothing to do with the business [he] was doing." *Id.* 26:2-5.

15

Respectfully submitted,

RESTRICTED SPENDING SOLUTIONS, LLC

By its attorneys,
SIMMONS BROWDER GIANARIS
ANGELIDES & BARNERD LLC

Dated: April 6, 2010            By: _/s/ Paul A. Lesko_____
Paul A. Lesko, IL #6288806
Jo Anna Pollock, IL #6273491
Stephen C. Smith, IL #6279828
707 Berkshire Blvd.
P.O. Box 521
East Alton, IL 62024
(618) 259-2222
(618) 259-2251 - facsimile
plesko@simmonsfirm.com
jpollock@simmonsfirm.com
ssmith@simmonsfirm.com

LOCAL COUNSEL:

Martin Jerisat, IL #6270027
LAW OFFICE OF MARTIN JERISAT
10 S. LaSalle Street, Suite 3300
Chicago, IL 60603
(312) 332-0333
info@thinkingip.com

16

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Michael P. Dulin
William T. Slamkowski
HENSLEY KIM & HOLZER, LLC
1660 Lincoln, Suite 3000
Denver, CO 80264
(720) 377-0770
(720) 377-0727 - direct
(720) 377-0777 - facsimile
mdulin@hkh-law.com
wslamkowski@hkh-law.com

Thomas L. Duston
Scott A. Sanderson
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive, Suite 6300
Chicago, IL 60606
(312) 474-6300
tduston@marshallip.com
ssanderson@marshallip.com

*ATTORNEYS FOR DEFENDANTS ALLOW CARD OF AMERICA, INC. & PALM DESERT INVESTMENTS*

Roderick M. Thompson
Eugene Y. Mar
June T. Tai
Andrew Leibnitz
FARELLA BRAUN + MARTEL LLP
Russ Building
235 Montgomery Street
San Francisco, CA 94104
(415) 954-4400
(415) 954-4480 - facsimile
rthompson@fbm.com
emar@fbm.com
jtai@fbm.com
aleibnitz@fbm.com

Frederick H. Cohen
Oscar L. Alcantara
GOLDBERG, KOHN, BELL, BLACK,
  ROSENBLOOM & MORITZ, LTD.
55 E. Monroe, Suite 3300
Chicago, IL 60603
(312) 201-3929 (Cohen)
(312) 201-3977 (Oscar)
frederick.cohen@goldbergkohn.com
oscar.alcantara@goldbergkohn.com

*ATTORNEYS FOR DEFENDANTS COMMERCE BANCSHARES, INC., VISA U.S.A., INC. & WACHOVIA CORP.
(WACHOVIA BANK, N.A.)*

Keith J. Grady
Graham L.W. Day
POLSINELLI SHUGHART PC
100 S. Fourth Street, Suite 1100
St. Louis, MO 63102
(314) 889-8000
(314) 552-6883 - direct
(314) 231-1776 - facsimile

17

kgrady@polsinelli.com
*ATTORNEYS FOR DEFENDANT UMB FINANCIAL CORP.*

Jennifer M. Zlotow
Allan J. Sternstein
Timothy K. Sendek
Renee L. Zipprich
DYKEMA GOSSETT PLLC
10 South Wacker Drive, Suite 2300
Lawrence K. Nodine
BALLARD SPAHR LLP
999 Peachtree Street
Atlanta, GA 30309
(678) 420-9422 - direct
(678) 420-9301 - facsimile
nodinel@ballardspahr.com

Chicago, IL 60606
(312) 876-1700
(312) 876-1155 - facsimile
jzlotow@dykema.com
asternstein@dykema.com
tsendek@dykema.com
rzipprich@dykema.com

*ATTORNEYS FOR DEFENDANT FIFTH THIRD BANCORP*

18

_/s/   Paul A. Lesko_
SIMMONS BROWDER GIANARIS
ANGELIDES & BARNERD LLC

**_Attorneys for Plaintiff_**