IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RESTRICTED SPENDING SOLUTIONS, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>ALLOW CARD OF AMERICA, INC.; PALM DESERT INVESTMENTS; WACHOVIA CORP.; PNC FINANCIAL SERVICES GROUP, INC.; PAYJR, INC., CARDLAB, INC.; THE BANCORP INC.; DISCOVER FINANCIAL SERVICES; DISCOVER BANK; BANK OF AMERICA CORP.; COMMERCE BANCSHARES, INC.; UMB FINANCIAL CORP.; FIFTH THIRD BANCORP; MASTERCARD INTERNATIONAL, INC.; VISA U.S.A. INC.; U.S. BANCORP,<br><br>        Defendants. | Case No. 1:09-cv-03785-RRP-NRN<br><br>Judge Rebecca R. Pallmeyer |

DEFENDANTS' REPLY BRIEF
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF
INVALIDITY OF PLAINTIFF'S U.S. PATENT NO. 6,044,360
IN VIEW OF VISA'S U.S. PATENT NO. 5,500,513

## TABLE OF CONTENTS

                                                                                                **Page**

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT ................................................................................................................... 2

    A.    There Is No Dispute Over The Well-Established Legal Standard – The Four Corners Of The '513 Patent Must Be Compared To The Claims Of The '360 Patent ...................................................................................................... 2

    B.    RSS Cannot Distinguish The '513 Patent On The Ground That It Does Not Disclose "Allowances," Given That The '360 Patent Claims Do Not Mention "Allowances" Either ..................................................................................... 2

    C.    "Funds" Is Defined by the '360 Patent And Does Not Require The Ability To Accumulate – A Concept Which Appears Nowhere In The Patent Or Prosecution History – Meaning That Visa's '513 Patent Cannot Be Distinguished Due To A Lack Of Accumulating "Funds" ........................................ 4

    D.    Even If The Court Were to Change The Definition of "Funds" To Require The Capacity To Accumulate – Which It Should Not Do – Visa's '513 Patent Discloses Accumulation Of Funds Just As Well As The Patent-In-Suit .................................................................................................................................. 8

    E.    No Expert Testimony Is Necessary To Determine This Motion; Plaintiff's Purported Expert's Testimony May Be Disregarded ............................................ 9

    F.    The Testimony Of RSS's Proffered Expert Cannot Raise Any Material Issue Of Disputed Fact Because The Testimony Lacks Both Relevance And Admissibility ................................................................................................. 10

III. CONCLUSION ............................................................................................................. 12

# TABLE OF AUTHORITIES
(Continued)

Page

## FEDERAL CASES

*CCS Fitness, Inc. v. Brunswick Corp.*,
  288 F.3d 1359 (Fed. Cir. 2002)..........................................................................4

*Callaway Golf Co. v. Acushnet Co.*,
576 F.3d 1331 (Fed. Cir. 2009)........................................................................10, 11

*In re Glaug*,
  283 F.3d 1335 (Fed. Cir. 2002)..........................................................................5

*In re Johnston*,
  435 F.3d 1381 (Fed. Cir. 2006)..........................................................................9

*Markman v. Westview Instruments, Inc.*,
  52 F.3d 967 (Fed. Cir. 1995).............................................................................4

*Martek Biosciences Corp. v. Nutrinova, Inc.*,
  579 F.3d 1363 (Fed. Cir. 2009).......................................................................1, 5

*Net MoneyIN, Inc. v. VeriSign, Inc.*,
  545 F.3d 1359 (Fed. Cir. 2008)..........................................................................2

*Oakley, Inc. v. Sunglass Hut International*,
  316 F.3d 1331 (Fed. Cir. 2003)..........................................................................4

*Perfect Web Technologies, Inc. v. InformationUSA, Inc.*,
  587 F.3d 1324 (Fed. Cir. 2009)..................................................................1, 9, 10

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005)..........................................................................2

*Scripps Clinic & Research Foundation v. Genentech, Inc.*,
  927 F.2d 1565 (Fed. Cir. 1991).........................................................................10

*See Dayco Products, Inc. v. Total Containment, Inc.*,
  258 F.3d 1317 (Fed. Cir. 2001).........................................................................12

*Sinorgchem Co., Shandong v. International Trade Commission*,
  511 F.3d 1132 (Fed. Cir. 2007).......................................................................4, 5

*Sundance, Inc. v. DeMonte Fabricating Ltd.*,
  550 F.3d 1356 (Fed. Cir. 2008)......................................................................10, 11

*Vitronics Corp. v. Conceptronic, Inc.*,
  90 F.3d 1576 (Fed. Cir. 1996)...........................................................................4

**TABLE OF AUTHORITIES**
(Continued)

Page

**FEDERAL STATUTES**

35 U.S.C. § 102 ................................................................................................................2

Fed. R. Civ. P. 56(c) .......................................................................................................12

I.  **INTRODUCTION**

Plaintiff RSS does not (and could not) dispute that the '513 Patent anticipates all asserted claims of the '360 Patent *as the claims are written*. Instead RSS seeks to rewrite the '360 Patent claims to add limitations that are not there. Michael Picciallo, the inventor of the '360 Patent, unequivocally defined the claim term "funds" in the patent specification to include lines of credit. RSS asks the Court improperly to rewrite this definition, adding the limiting phrase "which can accumulate" in an attempt to avoid the '513 Patent disclosure. Federal Circuit caselaw flatly rules out this argument. "When a patentee explicitly defines a claim term in the patent specification, the patentee's definition controls." *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1380 (Fed. Cir. 2009). Moreover, this litigation-inspired concept of "accumulation" as implicit in "allowances" is nowhere in the patent-in-suit or its file history.

Nor can RSS succeed in its attempt to use expert testimony to manufacture a factual issue. Although RSS submits a declaration of a purported "allowances" expert, Dr. Lewis Mandell, no expert testimony is needed given the straightforward technology at issue. Expert testimony is not necessary where "the technology will be easily understandable without the need for expert explanatory testimony." *Perfect Web Technologies, Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1329 (Fed. Cir. 2009) (affirming summary judgment of invalidity). In any event, Dr. Mandell's testimony is incompetent and irrelevant; it cannot create a triable issue.

Regardless of whether or not the Court considers the testimony of Dr. Mandell, RSS has failed to identify a single genuine issue of material fact at issue in this case. The Court should grant Defendant's motion for summary judgment based upon the invalidity of the '360 Patent.

II. **ARGUMENT**

A. **There Is No Dispute Over The Well-Established Legal Standard – The Four Corners Of The '513 Patent Must Be Compared To *The Claims Of The '360 Patent***

There can be no dispute that the scope of the '360 Patent is defined by the words of its claims. "It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (internal quotations omitted). Plaintiff RSS cites *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359 (Fed. Cir. 2008) for the proposition that the Visa '513 Patent must disclose "within the four corners of the document not only all of the limitations claimed but also all of the limitations arranged or combined in the same way *as recited in the claim*" to anticipate under 35 U.S.C. § 102. Plaintiff RSS's Opposition To Defendants' Motion For Summary Judgment Of Invalidity (hereinafter, "Opp.") at 8-9. RSS argues, however, that the claims of its patent are limited to "allowance" cards that have the "ability to accumulate funds" – even though there is no support in the claims, the caselaw, or the intrinsic record for such a narrowing of the '360 Patent claims. *Id.* at 2.

B. **RSS Cannot Distinguish The '513 Patent On The Ground That It Does Not Disclose "Allowances," Given That The '360 Patent Claims Do Not Mention "Allowances" Either**

RSS argues that "[t]he Visa patent does not disclose a periodic *allowance*," relying on the fact that "the Visa patent does not use the term '*allowance*.'" *Id.* at 5, 9 (emphasis added). This is irrelevant. None of the claims in the '360 Patent use the word "allowance" either. No legal significance arises from pointing out terms in the '360 Patent's specification which do not appear in Visa's '513 Patent. The relevant task is to compare the *claims* of the '360 Patent to the disclosure of the '513 Patent, the anticipatory reference.

The actual words used in the claims of '360 Patent require only the funding of customer accounts "periodically" or on a "weekly" or "monthly" basis – the adverbs on which RSS rests its argument that the some asserted claims are limited to "allowance" accounts. *See, e.g.,* Opp. at 5 ("Dependent claims 34 and 35 ... add limitations to claim 27 ('periodically' and 'weekly or monthly,' respectively) *which transforms claim 27 into an allowance* card.") (emphasis added). There can be no genuine dispute, however, that Visa's '513 Patent discloses the transfer of funds for spending by the cardholder (or "customer," in the '360 Patent's parlance) on a daily, monthly, or any other company-defined cycle for the purpose of allowing spending. *See* '513 Patent at 14:55-15:27 (attached as Ex. A to the February 5, 2010 Declaration of Roderick Thompson (hereinafter, "Thompson Decl.").

Specifically, the '513 discloses a method that uses variables named "daily spending limit counter," "calendar month spending limit counter," and "company-defined spending limit counter" to track spending and ensure that no cardholder exceeds her limit in any specified period. *See id.* at 14:55-59 ("The company sets a spending limit at the cardholder level ... for each period it wishes to track."). After incrementing the relevant counter with every purchase made during each day, month, or company-defined period, the counter is "refreshed (set to zero)" at the end of that period – meaning that the company replenishes each cardholder's account with funds at the end of each period. *E.g., id.* at 14:67-15:2 ("A daily spending limit counter is used to accumulate spending. This counter is refreshed at the end of each 24-hour period."); *id.* 15:4-6 ("A calendar month spending limit counter is refreshed (set to zero) at the end of the last day of the calendar month."). Accordingly, Visa's '513 Patent undeniably discloses "periodic" (or "weekly" or "monthly") transfers of funds for spending – *i.e.,* RSS's so-called "allowances" – in precisely the same way as set forth in the claims of the '360 Patent.


C. **"Funds" Is Defined by the '360 Patent And Does Not Require The Ability To Accumulate – A Concept Which Appears Nowhere In The Patent Or Prosecution History – Meaning That Visa's '513 Patent Cannot Be Distinguished Due To A Lack Of Accumulating "Funds"**

One of the more oft-repeated axioms of patent law is that "a patentee may be his or her own lexicographer by defining the claim terms." *E.g., Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1341 (Fed. Cir. 2003); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (*en banc*). The Federal Circuit has "repeatedly encouraged claim drafters who choose to act as their own lexicographers to clearly define terms used in the claims in the specification." *Sinorgchem Co., Shandong v. International Trade Comm'n*, 511 F.3d 1132 (Fed. Cir. 2007) (citing *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) ("[A] claim term will not receive its ordinary meaning if the patentee acted as his own lexicographer and clearly set forth a definition of the disputed claim term in ... the specification....") and *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("The specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication.").

Here, the specification of the '360 Patent unmistakably provides a definition of "funds" that includes the use of credit lines:

> *[F]or purposes of the present invention, the term 'funds' is defined as including credit lines* extended to account holders and third party recipients, as well as currency deposited by account holders.

'360 Patent at 6:50-53 (Thompson Decl., Ex. B) (emphasis added).

This definition conclusively establishes the meaning of "funds" for purposes of the '360 Patent to include credit lines. When the patentee provides an explicit definition of a term, "the inventor's lexicography must prevail." *In re Glaug*, 283 F.3d 1335, 1340 (Fed. Cir. 2002); *see*

*Sinorgchem Co.*, 511 F.3d at 1136) ("the inventor's lexicography governs"); *Martek*, 579 F.3d at 1380 ("the patentee's definition controls").

Remarkably, RSS does not even cite or otherwise address this controlling caselaw, which was cited and explained in Defendant's opening brief. See Mot. at 8-9.[1] Instead it argues that the '360 Patent "merely states that the definition should *include* 'credit lines'" and is not a "comprehensive definition for funds." Opp. at 11 (emphasis in original). RSS accurately points out that the '360 Patent's definition "does not address accumulation." *Id.* But that is exactly the point. The claim term "funds" is explicitly defined to include credit lines as well as currency; it is not limited to only a subset of funds "that can accumulate."

Ignoring the overwhelming legal precedent, RSS improperly seeks to rewrite the '360 Patent's express and controlling definition by the addition of the following underlined words into the definition and proposes this construction:

> <u>a supply of money</u> including credit lines extended to account holders and third party recipients, as well as currency deposited by account holders, <u>which can accumulate, be transferred and deposited</u>.

Opp. at 9.

However, the '360 patent itself, in the sentence following the definition of "funds," makes clear that "funds" are not limited to "funds" that "can accumulate." Account holder/Parents may choose *not* to allow accumulation and require repayment of allowances:

> *The account holder may require the third party recipient to repay the drawn credit*, and the account may thus be employed to control

---

[1] Regrettably, this is not the only instance of RSS engaging in misleading advocacy. For example, it represents to the Court "The concepts of allowance payments and *necessarily accumulation* are ... within the preferred embodiment" of the '360 Patent, citing Col. 3:24-34. Opp. at 10 (emphasis original). That section of the patent (and the rest of the patent), however, say nothing whatsoever about accumulation. Rather, it refers to a "preferred system" using a magnetic card issued to a son or daughter of the account holder/parent. Accumulation is not mentioned, let alone required by that or any other embodiment of the '360 Patent.

> a young person's use of credit, but at the same time teach them
> how to use the credit responsibly.

'360 Patent at 6:54-57 (Thompson Decl., Ex. B) (emphasis added). Because requiring repayment of allowances necessarily negates accumulation, RSS cannot contend that "allowance payments accumulate" within the '360 Patent's construction of the word "funds."[2]

Even if RSS could now somehow go back and rewrite the '360 Patent's own express definition – which it cannot – there would be no basis in the intrinsic record for its proposed altered definition. Neither the patent nor its prosecution history provides any support for insertion of the phrase "which can accumulate" into the construction of "funds." Neither "accumulate" nor any of its variants, roots, or synonyms appears anywhere in the claims, the specification, the drawings, or the prosecution history of the patent-in-suit – as even RSS's expert admits. *See* Mandell Dep. at 64:1-13; 96:15-18; 110:2-20 (attached hereto as Ex. A to the Declaration of Andrew Leibnitz (hereinafter, "Leibnitz Decl.")). In order to import the "accumulation" concept into the patent, RSS first argues that "allowance payments accumulate," Opp. at 3, and then cites the use of the word "allowance" in the specification as evidence of accumulation. *Id.* at 10 (citing passages).[3] But, as noted, "allowance" is not used in the claims

---

[2] RSS also argues that "funds" within the meaning of the patent-in-suit must have the capacity for accumulation in order to effectuate the stated goal of "teach[ing] the dependent how to budget their money and manage cash flow." Opp. at 3 (citing '360 Patent at 6:60-61 (Thompson Decl., Ex. B)). However, even RSS's expert admits that dependents can adhere to budgets and manage their cash flow without accumulating funds. Mandell Dep. at 126:12-19 (Leibnitz Decl., Ex. A). Again, no reason exists to depart from the patent's definition of "funds" to incorporate any concept of accumulation.

[3] RSS cites Paragraphs 30-31 of Dr. Mandell's Declaration for the proposition that "the ability to accumulate funds is paramount to allowances." Opp. at 2. However, these cited paragraphs nowhere mention accumulation. RSS then cites Paragraph 25 of Dr. Mandell's Declaration in arguing that "[s]ubsumed in the concept of allowances is the ability to accumulate funds." Opp. at 5. However, here Dr. Mandell merely states, "Receipt of an allowance *can* teach a child to use periodic allowance payments to accumulate savings over time." *Id.* (emphasis added). Nothing about that sentence dictates that "allowance payments accumulate," or suggests that parents may

and there is no basis to import it into the claims. Moreover, the use of one term in the specification ("allowance") does not justify importing another term ("accumulation") into the claims.

In yet another variation of the same flawed argument, and recognizing that all asserted claims of the patent-in-suit include the phrase "funds deposited" or "transferred," RSS asserts that Visa's '513 Patent does not anticipate because it focuses on extension of funds through credit, while the "funds" of the asserted claims must be deposited or transferred. *See* Opp. at 10, 13-14. Most fundamentally, this once again ignores '360 Patent's definition of funds:

> The system of the present invention is not limited to preestablished currency accounts at banking institutions, but also includes credit accounts, within which the account holders may establish a sub-line of credit that may be drawn against by a third party recipient. *Thus, for the purposes of the present invention, the term 'funds' is defined as including credit lines extended to account holders and third party recipients*, as well as currency deposited by account holders.

'360 Patent at 6:46-53 (Thompson Decl., Ex. B) (emphasis added).

RSS cannot erase the inclusion of credit within the controlling definition of "funds" simply because the claims refer to "funds deposited." Funds drawn on a line of credit, like any other funds, can be deposited. Because RSS's asserted claims cover credit-based implementations, and because Visa's '513 Patent indisputably discloses credit-based implementations, *e.g.*, '513 Patent at 1:6-8, no reasonable juror would accept RSS's attempt to distinguish the two patents based on RSS's tortured definition of "funds."[4] The '513 Patent

---

not provide allowances to children on what RSS terms a "use-it-or-lose-it" basis.

[4] In any event, even if the patent-in-suit's "funds" excluded credit – which is not the case – Visa's '513 Patent discloses in its very first claim "[a] method for authorizing transactions *for distributing currency* or purchasing goods and services." '513 Patent at 17:20-21 (Thompson Decl., Ex. A) (emphasis added). While RSS bases its distinction of the Visa '513 Patent on the apparent assumption that Visa's patent excludes distribution of currency – which even

discloses a sophisticated purchasing control system in which funds must necessarily be transferred and deposited in order to make the payments needed to cover purchases. '513 Patent at 2:24-33 ("The present invention merges a company's purchasing control system with a credit card authorization system . . . approving or disapproving purchases by employees in real-time at the time of purchase"), *see also id.* at 1:6-8; 1:60-3:14; 3:48-6:9; 7:8-8:60; 11:64-13:3; 13:47-20:28 (Thompson Decl., Ex. A).

As with the use of the word "deposited," RSS seizes on the word "transfer" in the claims to suggest that Visa's credit-based funds may not be "transferred" in the same way as the debit-based funds (currency) supposedly required by the asserted claims. Opp. at 10, 13-14. As RSS's expert acknowledges, however, "you can transfer credit from one party to another." Mandell Dep. at 95:12-15 (Leibnitz Decl., Ex. A). Because the appearance of the word "transfer" in the asserted claims in no way distinguishes the patent-in-suit from Visa's '513 Patent, no genuine issue of material fact exists.

**D.     Even If The Court Were to Change The Definition of "Funds" To Require The Capacity To Accumulate – Which It Should Not Do – Visa's '513 Patent Discloses Accumulation Of Funds Just As Well As The Patent-In-Suit**

No dispute exists that Visa's '513 Patent discloses cash advances. *E.g.*, '513 Patent at 13:47-57 (Thompson Decl., Ex. A); Mandell Dep. at 114:20-23 (Leibnitz Decl., Ex. A) (agreement by RSS's expert). Additionally, at the time of Mr. Picciallo's invention, "everyone" in the field of the patent-in-suit – not just ordinarily-skilled practitioners – would have known that cash can accumulate. Mandell Dep. at 115:19-23 (Leibnitz Decl., Ex. A). Thus, RSS's expert concedes that the Visa '513 Patent discloses funds which can accumulate:

> Q. Is it possible for the cardholder under the Visa '513 patent to withdraw funds and accumulate them?

Dr. Mandell concedes is subject to deposit – RSS's assumption is wrong. *Id.*; Mandell Dep. at 115:19 - 116:4. Currency, once distributed, of course can be deposited.

> **A.** The answer is that there would be no prohibition, that I can recall, coming from the patent, but the presumed use would tend to limit one's ability to do that.
>
> ...
>
> **Q.** So it's possible in the family context for the cardholder [under Visa's '513 Patent] to accumulate funds?
>
> **A.** Depending upon the agreement made by the account owner with the recipient of those funds. Sure, it's possible.

*Id.* at 117:19-25, 119:10-14. Thus, when the cardholder under the Visa '513 Patent chooses to draw on her regular credit line in cash, she is not placed in a "use-it-or-lose-it" situation regarding her funds – despite the repeated assertion of RSS in its Opposition – as even RSS's expert concedes. *Id.* at 118:23-120:15.

As RSS's expert likewise concedes, the '360 Patent claims at most "*allow* for accumulation but do not *require* it." *Id.* at 69:5-12 (emphasis added). This is a concession that accumulation is not a limitation in RSS's claims. *See In re Johnston*, 435 F.3d 1381, 1384 (Fed. Cir. 2006) (upholding anticipation of claim which stated that "wall *may* be smooth" on grounds that "optional elements do not narrow the claim [and thus need not be disclosed in anticipatory prior art] because they can always be omitted"). Accordingly, even though Visa's '513 Patent discloses funds capable of accumulation, it need not do so in order to anticipate the asserted claims of the patent-in-suit since accumulation is not required.

### E. No Expert Testimony Is Necessary To Determine This Motion; Plaintiff's Purported Expert's Testimony May Be Disregarded

"In many patent cases, expert testimony will not be necessary because the technology will be easily understandable without the need for expert explanatory testimony." *Perfect Web Technologies, Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1329 (Fed. Cir. 2009). In *Perfect Web*, the parties agreed that "ordinary skill in the relevant art required only a high school education and

limited marketing and computer experience." *Id.* at 1330. On that basis, the Federal Circuit found that "[n]o expert opinion is required," and upheld summary adjudication of invalidity. *Id.*

Here, the parties have agreed that the ordinary skill in the art required only a high school education and basic familiarity with computer programming and the use of credit cards. *See* Plaintiff Restricted Spending Solutions, LLC's Statement Of Uncontroverted Material Facts ¶ 19. (conceding that this fact is "not contested"). RSS offers no rejoinder to this point, despite Defendants' reliance on *Perfect Web* in their moving papers. *See* Mot. at 7. *Perfect Web* is controlling. This Court need not consider any expert testimony.

### F. The Testimony Of RSS's Proffered Expert Cannot Raise Any Material Issue Of Disputed Fact Because The Testimony Lacks Both Relevance And Admissibility

In opposing Defendants' motion, RSS does not dispute that the law requires analysis of invalidity to proceed from the perspective of a person of "ordinary skill in the art" at the time of the invention. *See* Mot. at 7 n.5 (citing *Scripps Clinic & Research Foundation v. Genentech, Inc.*, 927 F.2d 1565, 1576 (Fed. Cir. 1991)). The law here is indisputable: "A patent claim is invalid due to anticipation if, within the four corners of a single, prior art document, every element of the claimed invention is described ... such that a *person of ordinary skill in the art* could practice the invention without undue experimentation." *Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1346 (Fed. Cir. 2009) (emphasis added) (quotation omitted).

"[A] witness not qualified in the pertinent art may not testify as an expert as to anticipation." *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1364 (Fed. Cir. 2008).[5] Here, RSS's expert – a retired finance professor – confessed his lack of qualification in

---

[5] RSS does not question the qualifications of Visa's expert, Dr. Goodman, one of the inventors of the '513 patent or that he is one skilled in the relevant art. Instead, RSS lamely attacks Dr. Goodman's credibility because he accepted an early retirement package from Visa. This argument at most would go to the weight of his testimony not its relevance or admissibility.

the field of the invention to which the parties stipulated. As noted, the parties agree that, at the time of the invention, "the ordinarily-skilled practitioner in the art of computerized purchasing control possessed a high school education and basic familiarity with computer programming and the use of credit cards." *See* Plaintiff Restricted Spending Solutions, LLC's Statement Of Uncontroverted Material Facts ¶ 19. RSS makes no suggestion in its opposition papers that any other field of invention or level of skill should apply in this case.

RSS's expert disavowed any computer programming expertise outside of his use of Microsoft Excel, *id.* at 44:22-51:20, and admitted that he did not base his opinion on any familiarity with computer programming. *Id.* at 54:7-55:24; *see id.* at 54:17-20 ("I do not believe that my opinions are really based upon any expertise that I have in computer programming."). Moreover, RSS's expert disavowed any expertise in the field of computerized purchasing control — the only field of any relevance.

> **Q.** So I guess it follows that you'd not purport to be – or hold yourself out to this court to be an expert in computerized purchasing control?
>
> **A.** I certainly have not, to my recollection, ever studied the area in any kind of detail or written anything in the area. So I don't think I have any unique skills in computerized purchasing control.

Mandell Dep. at 23:11-18 (Leibnitz Decl., Ex. A). Because RSS's expert admitted his lack of qualification to opine on the subject matter of the patents here, his opinion lacks any relevance. *Sundance*, 550 F.3d at 1364.

Moreover, RSS's expert repeatedly testified that he did not base his conclusions upon the perspective of a person of ordinary skill in the art:

> **Q.** In reaching your conclusion regarding the uniqueness of the Picciallo patent, did you undertake to place yourself in the position of a person of ordinary skill in the art of credit cards or allowances?

A. No.

Mandell Dep. at 22:16-21 (Leibnitz Decl., Ex. A); *see also id.* at 26:10-23.

Because RSS's expert did not address invalidity from the only material perspective – that of an ordinarily-skilled artisan – his opinion lacks any relevance. *See Dayco Products, Inc. v. Total Containment, Inc.*, 258 F.3d 1317, 1324 (Fed. Cir. 2001) ("[W]e must always be conscious that our objective is to interpret the claims from the perspective of one of ordinary skill in the art, not from the viewpoint of counsel or expert witnesses retained to offer creative arguments in infringement litigation.") (citation omitted). Dr. Mandell's opinions – even if expert testimony were necessary to determine this motion – cannot raise any genuine factual dispute regarding this patent's invalidity.

## III. CONCLUSION

There can be no genuine dispute that each element of the asserted claims of the '360 Patent is disclosed to one of ordinary skill by a reading of the four corners of the '513 Patent. As the parties agree on the level of skill in the art, and the payment/allowance card technology is easily understandable, the Court can reach that conclusion without consideration of any proffered expert testimony. If considered, however, a review of the expert testimony reinforces that same conclusion. For the foregoing reasons, Defendants respectfully request that the Court find U.S. Patent No. 6,044,360 invalid as a matter of law in view of the '513 Patent. Fed. R. Civ. P. 56(c).

Dated: May 21, 2010                                             Respectfully submitted,

I represent that concurrence in the filing of this document has been obtained from each of the other signatories which shall serve in lieu of their signatures on this document.

By:     /s/ Roderick M. Thompson
    Roderick M. Thompson
    Andrew Leibnitz
    FARELLA BRAUN + MARTEL LLP
    235 Montgomery Street, 17th Floor
    San Francisco, CA 94104
    Telephone: (415) 954-4400
    Facsimile: (415) 954-4480
    Email: rthompson@fbm.com

    Oscar L. Alcantara
    GOLDBERG KOHN BELL BLACK
    ROSENBLOOM & MORITZ, LTD.
    55 East Monroe Street, Suite 3300
    Chicago, IL 60603
    Telephone: (312) 201-4000

*COUNSEL FOR DEFENDANTS*
*VISA U.S.A. INC., WACHOVIA CORP., AND*
*COMMERCE BANCSHARES, INC.*


By:     /s/ Michael Patrick Dulin
    Michael Patrick Dulin
    William Terence Slamkowski
    HENSLEY KIM & HOLZER, LLC

*COUNSEL FOR DEFENDANTS ALLOW*
*CARD OF AMERICA, INC. and PALM*
*DESERT INVESTMENTS*


By:     /s/ Keith J. Grady
    Keith J. Grady
    Graham L.W. Day
    POLSINELLI SHUGHART PC

*COUNSEL FOR DEFENDANT UMB*
*FINANCIAL CORP.*

- 14 -

        By:   /s/ Lawrence K. Nodine
             Lawrence K. Nodine
             NEEDLE & ROSENBERG, P.C.

*COUNSEL FOR DEFENDANT FIFTH THIRD BANCORP*

## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2010, all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing instrument via the Court's CM/ECF filing system.

        /s/ Roderick M. Thompson