**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **RESTRICTED SPENDING SOLUTIONS, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No. 09 C 03785 |
| | ) | |
| **ALLOW CARD OF AMERICA, INC.;** | ) | Judge Rebecca R. Pallmeyer |
| **PALM DESERT INVESTMENTS;** | ) | |
| **WACHOVIA CORP.;** | ) | |
| **PNC FINANCIAL SERVICES** | ) | |
| **GROUP, INC.; PAYJR, INC.;** | ) | |
| **CARDLAB, INC.; THE BANCORP INC.;** | ) | |
| **DISCOVER FINANCIAL SERVICES;** | ) | |
| **DISCOVER BANK; BANK OF AMERICA CORP.;** | ) | |
| **COMMERCE BANCSHARES, INC.;** | ) | |
| **UMB FINANCIAL CORP.;** | ) | |
| **FIFTH THIRD BANCORP;** | ) | |
| **MASTERCARD INTERNATIONAL, INC.;** | ) | |
| **VISA U.S.A., INC.; U.S. BANCORP;** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Restricted Spending Solutions LLC ("RSS") is the assignee of U.S. Patent Number 6,044,360 (the " '360 Patent"), a system for allocating funds in pre-established customer accounts. Essentially, the patented invention empowers an individual who is actually responsible for funding purchases made on a particular credit or debit card–such as a parent or an employer–to set limitations on what the cardholder may purchase with the card. Plaintiff charges that Defendants, a host of credit-card companies and financial institutions, have infringed on its patent by making, using, and selling "teen cards" and "corporate cards," which allow parents/employers to monitor and control purchases made by their children/employees. They claim that these cards fall within the scope of the '360 Patent. Defendants have moved for summary judgment on grounds of invalidity, arguing that the relevant claims of the '360 Patent are anticipated by an earlier patent held by

Defendant VISA U.S.A. Inc. ("VISA"). For the reasons explained below, Defendants' motion for summary judgment is granted.

## BACKGROUND

**I.     The '360 Patent**

The '360 Patent describes a system for "transferring funds, such as periodic allowance payments," to preestablished customer accounts for use by designated third-party recipients. (360 Patent, Ex. A to Compl., 1:11-12). According to the patent, the system provides the transferor with control over how the recipient uses the received funds and gives the transferor an accounting of all purchases made with the funds. (*Id.* at 3:55-65; 4:1-31.) The system also allows the transferor to set restrictions on the amounts of money that may be spent on "particular classes of goods and services." (*Id.* at 13:5-7.) The patent states that "the primary advantage of the present invention is that an itemized statement is issued to the account holder periodically, i.e., weekly or monthly, providing an accounting of how the set aside funds were spent." (*Id.* at 3:55-58.)[1] In distinguishing the invention from the prior art, the patent further explains that, unlike systems described in earlier patents, the invention of the '360 Patent allows the transferor to set limits "on how the money may be spent and then receive a subsequent accounting of how the money was actually spent." (*Id.* at 2:12-15.)

In lay terms, the '360 Patent describes a process that allows a "parent" to transfer funds to a special account for the use and benefit of a designated "child."[2] The child may then use the funds to make approved purchases, while the parent retains ultimate authority to place limitations upon

---

[1]    Conventional credit cards have long provided users with periodic accounting statements, and it is unclear to the court why the patentee characterized this function as the "primary advantage" of the patented invention. Rather, the presumptive novelty of the invention seems to relate to the ability of the user to place specific restrictions on a card's use.

[2]    The parent/child description is only illustrative; the patent also contemplates use of the system by organizations such as employers or merchants (e.g., casinos). (360 Patent, Ex. A to Compl., 1:63-67).

the funds. The funds may only be accessed subject to the parent's restrictions. For example, a parent might deposit $100 into a child's account with the following *caveat*: Junior may use the funds in this account to buy text books and groceries, but he may not use the funds to purchase alcohol, tobacco, or R-rated movie tickets. (*Id.* at 2:5-9.) Presumably, when Junior then attempts to use the card to purchase a case of beer, the card will be declined and the system will notify the seller that funds are not available for this purchase. The '360 Patent also contemplates that a parent might opt to transfer funds into a child's account "automatically" and/or "periodically." (*Id.* at 11:55-64; 13:33-34.) For instance, Claim 34 contemplates that a parent might elect to deposit funds on a weekly or monthly basis. (*Id.* at 15:8-9.) Thus, the hypothetical parent might elect to automatically deposit Junior's $100 monthly allowance directly into his account, while perpetually maintaining restrictions on Junior's ability to purchase alcohol, tobacco, or R-rated movie tickets.

Michael Picciallo is the inventor of the '360 Patent. Plaintiff contends that Picciallo conceived of the system while working as the manager of a roller skating rink in 1996. Picciallo recalled that parents frequently dropped their children off at his rink with cash. Once the parents were gone, however, the children would leave the rink and spend the cash elsewhere. "Parents would later pick up their children from the roller skating rink, ignorant as to where their children actually spent their money." (Pl.'s Br. at 1.) On April 16, 1996, Picciallo filed a three-page handwritten disclosure with the Patent Office, describing his "very simple" idea for an "Allowance Card." (Ex. D to Thompson Decl., RSS 001483-1490.) The disclosure states, in part:

> A major credit card company [such as] Visa, Master Card, Discovery [sic], Amex will be the support. Say John Doe has a card such as those stated above. He has a son and daughter in high school and wants to give them a monthly allowance but is afraid of just handing out money and where they are spending it. He has the card company issue two allowance cards under his main account. He tells the card company to take $80.00 a month, charge it to his account, and put $40.00 to each of the children's allowance cards. They can only spend that $40.00, no more[. I]f they choose to spend it quicker or slower within the month it is their choice[. T]he parent is disciplined not to give them anymore money until the next month and the

kids are disciplined by the Allowance Card constraints.[3]

(*Id.*) The Patent Office initially rejected Picciallo's application because it did not include any claims that complied with 35 U.S.C. § 112, which requires that a claim use "full, clear, concise, and exact" terms. (*Id.* at RSS 001507-1510.) In response, Picciallo amended his claims and supplemented them with declarations from two computer programmers, who averred that the submitted claims were sufficient to allow a person of ordinary skill in the art to implement the invention. (Ex C. to Thompson Decl., RSS 000174.) Picciallo also submitted his own supporting declaration, which states in part: "My patent claims cover two concepts. The first is an allowance account that is automatically and periodically funded (see claims 78-96). The other is an allowance account having periodic transaction limits for particular classes of goods and services (see claims 97-115)." (Ex C. to Thompson Decl., RSS 000157.)

Picciallo filed his amended application in June 1997 and ultimately succeeded in obtaining the '360 Patent on March 28, 2000. (*Id*; 360 Patent, Ex. A to Compl.) Claim 8 of the patent is particularly significant for purposes of the instant order. It describes:

> A computer-based method for allocating funds in preestablished accounts for use by customers, comprising:
>
> creating for each customer a customer account file containing a record of funds deposited for said customer;
>
> automatically transferring periodically to said account file depositor funds for use by said customer;
>
> limiting the amount of funds in said customer account file that may be spent on particular classes of goods and services in response to command instructions from the fund depositor; and

---

[3] Picciallo's supporting affidavit makes clear that by "constraints," the disclosure refers only to the limitations placed upon purchases by the cardholder, not any attempt to encourage the accumulation of funds across pay periods. "Regarding Allowance Card constraints, the disclosure states that the 'Allowance Card controls monies that are designated for certain purchasers by wage earners for their dependents,' and 'prohibits minors or dependents from possible purchases of alcohol, tobacco or controlled dangerous substances.'" (Picciallo Declaration, Ex. D to Thompson Decl., RSS 001484.)

> verifying each transfer from said customer account file requested by said customer to determine whether the requested funds exceed the limit set for the goods and services to be purchased.

(*Id.* at 13:28-34.)  The patent also explains that the preferred embodiment of the claim would rely on existing credit-card systems and banking infrastructure:

> Banking and credit card institutions have already encoded merchants and service providers with this information for billing purposes, so that it would not be difficult to similarly encode an approval request in a debit card point-of-sale transaction. . . .
>
> . . . .
>
> The system of the present invention is also extremely versatile because of its ready adaptability to existing banking networks.

(*Id.* at 11:15-19; 12:38-40.)  Nowhere in the claims or elsewhere in the patent is there any explicit mention of or emphasis on the account's ability to "accumulate" funds under the described system.

**II.      The VISA Patent**

Defendants contend that the claims of the '360 Patent are actually anticipated by U.S. Patent Number 5,500,513 (the "'513 Patent"), which was issued to three VISA researchers in March 1996, more than a year before Picciallo filed his ultimately successful patent application.  ('513 Patent, Ex A. to Thompson Decl.)  The '513 Patent describes a system for the "automatic control of purchasing, in particular using credit cards[,]" which "merges a company's purchasing system with a credit card authorization system to produce a real-time purchasing authorization and control system."  (*Id.* at 1:5-8; 2:24-30.)

The '513 Patent is generally directed for use with Visa's then-existing corporate card program and contemplates reliance on Visa's credit infrastructure.  (*Id.* at 6:10-8:30.)  Like Picciallo's concept, the system described in the '513 Patent uses "merchant codes in order to limit purchases to those merchant types which would be needed by a particular department or individual [employee]."  (*Id.* at 2:24-40.)  The '513 Patent also describes how an employer may use the system to control the spending of an individual cardholder by restricting how much the cardholder

5

may spend in a given period and by limiting his spending to particular classes of goods and services. (*Id.* at 13:49-57; 14:54-59.) For example, an employer might restrict a specific employee's ability to make cash withdrawals using the company credit card, or the employer might tailor the system to allow a traveling salesperson, but not a stocking clerk, to use the company card at hotels and restaurants. (*Id.* at 14:54-59; 2:10-15.)

Despite the apparent similarities of the described systems, the '360 Patent makes no mention of the '513 Patent in its attempt to distinguish Picciollo's concept from the existing prior art. (360 Patent, Ex. A to Compl.)

## DISCUSSION

**I.     Legal Standard**

Summary judgment is appropriate if the materials in the record demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In considering a motion for summary judgment, the court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in its favor. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250-51 (1986).

An invention is not patentable by reason of anticipation if "the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b). "While anticipation is a question of fact, 'it may be decided on summary judgment if the record reveals no genuine dispute of material fact.'" *Leggett & Platt, Inc. v. VUTEk, Inc.*, 537 F.3d 1349, 1352 (Fed. Cir. 2008) (quoting *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1321 (Fed. Cir. 2008)). Likewise, where the technology at issue in a patent is "easily understandable," the court may judge the validity of a claim without recourse to expert testimony regarding the state of knowledge among those with ordinary skill in the art. *See Perfect Web Technologies, Inc., v. InfoUSA, Inc.*, 587 F.3d 1327, 1328-30 (Fed. Cir. 2009).

## II.     Anticipation of the '360 Patent

A patent is presumed to be valid. *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000). To overcome this presumption and demonstrate that a claim is anticipated, a defendant must show by clear and convincing evidence that each and every element set forth in the claim is found, either expressly or inherently described, in a single prior art reference. *See SRI Intern., Inc. v. Internet Sec. Sys., Inc.*, 511 F.3d 1186, 1192 (Fed. Cir. 2008); *see also Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1327 (Fed. Cir. 2008). Determining whether a prior art reference anticipates a claim is a two-step process. The first step requires the court to construe the disputed claim terms of the patent-in-suit, and the second step involves comparing the construed claim terms to the prior art. *Heliflix Ltd.*, 208 F.3d at 1346.

### A.     Construction of "Funds"

In this case, the only argument that Plaintiff raises on the merits of anticipation relates to the term "funds."[4] Plaintiff contends that the '360 Patent's use of that term implies an ability for funds to "accumulate over time." (Pl.'s Br. at 9.) This asserted ability to *accumulate* funds, Plaintiff urges, is not an element of the '513 Patent and therefore defeats Defendants' anticipation argument. Indeed, the invention embodied in '513 Patent uses a traditional line-of-credit system to fund purchases made with its cards, with balances that simply reset at the end of each funding period. Under that system, the lines of credit do not carry over from reporting period to reporting period, and the cardholder is rendered unable to aggregate or amass a reserve of funds for his use.

---

[4]     Plaintiff also attempts to distinguish the claims of the '360 Patent on the theory that they contemplate a "periodic allowance." This argument, however, is substantially the same one that Plaintiff raises in the context of the term "funds." As Defendants correctly point out, the '360 Patent claims themselves make no reference to an "allowance" of any kind. Instead, the claims refer only to the transferring of funds to customer accounts at periodic (i.e., weekly or monthly) intervals. The court therefore sees no need to address Plaintiff's "periodic allowance" argument separately. It suffices to observe that the '513 Patent contains an identical term, which allows an employer to periodically fund employee cards daily, monthly, at each billing-cycle, or at other defined intervals. ('513 Patent, Ex A. to Thompson Decl., 14:54-67.)

7

Significantly, however, the '360 Patent itself makes no explicit reference to "accumulation" anywhere. Rather, Plaintiff asks the court to read such a reference into the term "funds" in light of the term's use in context. For example, Plaintiff points to the fact that Claim 8 describes how "funds" may be "automatically" and "periodically" transferred into an account. Claim 34 refers to fund transfers at weekly or monthly intervals. The regular, periodic transfer of *currency* into an account–assuming that the money is not depleted in the intervening period–would logically result in the *accumulation of funds.* Thus, Plaintiff argues, the concept of accumulation is intrinsic in the patent's use of the term "funds."

In defending the '360 patent against the claim that it was anticipated, Plaintiff urges that the invention described in the '360 Patent is intended to permit a child to carry over his balance across funding periods and thereby accumulate funds, ostensibly as a way of encouraging the child to save money. Plaintiff, however, does not point to any language in the '360 Patent or its prosecution history capable of confirming that this type of incentive is indeed contemplated by the patent. Rather, the patent is clear in asserting that the "primary advantage" of the patented invention is the ability to allow the parent to control spending and to receive reports on how funds are spent. The actual language of patent in no way indicates an intent to encourage saving, as Plaintiff now urges in an effort to avoid summary judgment.

Likewise, there is nothing inherent about the concept of "accumulation" in the meaning of "funds"–even funds that are "automatic" or "periodically" refreshed–as that term appears in the '360 Patent. Claim terms must be construed in the light of the entire patent and read in view of the specification of which they are a part. *Sun Pharm. Indus., Ltd. v. Eli Lilly & Co.*, 611 F.3d 1381, 1388-89 (Fed. Cir. 2010); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005). The specification of the '360 Patent specifically defines "funds" to include both *currency* and *lines of credit.* "[F]or purposes of the present invention, the term 'funds' is defined as including credit lines

extended to account holders and third party recipients, as well as currency deposited by account holders." ('360 Patent, Ex. A to Compl., 6:50-54.) As both parties acknowledge, currency can accumulate: the more money deposited into an account, the greater the balance. Lines of credit, however, do not necessarily accumulate; unused credit in this payment cycle does not necessarily result in greater available credit in the next one. Thus, by defining "funds" to include lines of credit as well as currency, the '360 Patent explicitly indicates an intent *not* to import a concept of *accumulation* into the term. Rather, the term "funds" describes two subsets; one that may accumulate and one that does not. "The specification acts as a dictionary when it expressly defines terms used in the claims *or when it defines terms by implication*." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) (emphasis added) (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996)). By implication, the term "funds" should not be construed as requiring that they be capable of accumulation. In cases such as this one, where the claims are unambiguously defined, this court must refrain from narrowing claims in order to preserve their validity. *See Phillips*, 415 F.3d at 1327; *Texas Instruments v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165, 1172 (Fed. Cir. 1993) ("'[C]ourts can neither broaden nor narrow claims to give the patentee something different than what he has set forth.'") (quoting *Autogiro Co. of Am. v. U.S.*, 384 F.2d 391, 396 (Ct. Cl. 1967). Under the explicit terms of the patent, accumulation is not the inherent consequence of periodic or automatic funding of an account.[5]

In common usage, the term "fund" means "a sum of money or other resource whose

---

[5] Had the applicant for the patent-in-suit disclosed the existence of the '513 patent, this one presumably would not have issued in its current form. The '513 patent refers to a nearly identical system of controlled cards that drew on lines of credit, a concept that is explicitly incorporated into the '360 Patent by its definition of the term "funds." Indeed, had the '360 Patent and the '513 Patent been issued in reverse order, the claims of the '513 patent would likely be vulnerable to claims of anticipation. Plaintiff is not simultaneously entitled to a broad construction of its claims in an action for infringement and a narrow construction of its claims to preserve validity. *Phillips*, 415 F.3d at 1327. Had the '360 Patent defined "funds" more narrowly to include only cash deposits (that is, limited to use in what is known as "debit cards"), it might have been deemed materially distinguishable from the prior art of the '513 Patent.

principal or interest is set apart for a specific objective."  MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 472 (10th ed. 1997).  This definition, as modified by the specification to include either currency that is transferred into an account or money that is drawn from lines of credit, is consistent with the use of the term "funds" in the '360 Patent.  It is unnecessary to import any concept of accumulation into such a term.  Plaintiff's proffered construction of "funds" is therefore rejected.

### B. Comparing the Terms to the Prior Art

Like the '360 Patent, the '513 Patent explicitly contemplates a system based on money, including cash advances, drawn from lines of credit.  ('513 Patent, Ex A. to Thompson Decl., 13:49-56.)  The court sees no meaningful distinction between the '513 Patent's use of *currency* and *lines of credit* and the term "funds" as it is used in the '360 Patent.  Thus, Plaintiff may not rely on any such claimed distinction to establish the novelty of the '360 patent.  All other claim elements of the '360 Patent, including the ability of the account holder to control the purchases of an individual cardholder and to receive periodic reports of the cardholder's purchases, are contemplated by the prior art of the '513 Patent.[6]  Accordingly, Defendants are entitled to summary judgment as to invalidity of the '360 Patent because its claims are entirely anticipated by Visa's '513 Patent.

---

[6] Plaintiff's own argument, focusing exclusively on the ability of "funds" to accumulate, implicitly concedes this fact.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment on invalidity grounds [206] is granted.

ENTER:

*[signature: Rebecca R. Pallmeyer]*

Dated: September 28, 2010

REBECCA R. PALLMEYER
United States District Judge